Paul E. McDANIEL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 21202.

United States Court of Appeals
Fifth Circuit.

April 7, 1965.

Rehearing Denied May 11, 1965.

Charles D. Cottingham, Austin C. Wilson, Houston, Tex., for appellant, Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., of counsel.

James R. Gough, William M. Schultz, Asst. U. S. Attys., Woodrow Seals, U. S. Atty., Fred L. Hartman, Asst. U. S. Atty., Houston, Tex., for appellee.

Before BROWN and BELL, Circuit Judges, and HUNTER, District Judge.

HUNTER, District Judge:

Appellant, together with George Mellen and several others, was indicted on July 10, 1962 on 56 counts. Count I charged the appellant and his co-defendants with conspiracy under 18 U.S.C.A. § 371 to violation of the Securities Act of 1933 and the Securities and Exchange Act of 1934. Counts 2 through 45 of the indictment each re-alleged the facts of the conspiracy by reference, and then set out a particular mailing in furtherance of the scheme in violation of Title 15 U.S.C.A. 77q(a) (1). Counts 46 through 56 involve in each instance the sale of an unregistered security through use of the mails in violation of Title 15 U.S.C.A. 77e(a) (1) and 77e(a) (2).[1]

The case proceeded to trial before a jury and appellant was found guilty on all counts, save and except nine (9) counts which were withdrawn by the Court from the jury's decision. A motion for judgment of acquittal and/or for a new trial was denied and sentence was

7. § 77q. *Fraudulent interstate transactions*

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, * * *"

§ 77e. *Prohibitions relating to interstate commerce and the mails*

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

imposed. On appeal defendant asserts failure of proof, errors in ruling upon evidence, and errors in connection with the charge to the jury.

Appellant does not attack the sufficiency of the evidence to support the verdict on Count I (the conspiracy charge), but strenuously attacks the sufficiency of the evidence as to all other counts. More particularly, he urges as to these counts (a) the mailing was done by outsiders who had no connection whatsoever with the alleged fraud, and (b) the scheme, if there was one, which appellant denies, in each case had reached fruition and the sales had been completed before the particular mailing occurred.

The facts relied on by the Government which the record amply supports may be generalized as follows:

Ambrosia Minerals, Inc. (hereinafter referred to as AMI) was originally organized under the name of Belmont Uncle Sam Mining Company in 1926. It was entirely inactive and without assets or liabilities for at least ten years prior to April 19, 1956, when control of it was acquired by appellant McDaniel and George Mellen. The apparent purpose of the acquisition was to utilize AMI as a vehicle for the acquisition of various other companies. As a result of acquisitions and mergers, substantial blocks of unregistered AMI stock were issued and ultimately distributed to the public by appellant McDaniel and Mellen, who either controlled several of the companies acquired by or merged with AMI, or had an interest in them. The books and records of AMI indicate that the company never operated at a profit. Nevertheless, McDaniel and Mellen, in order to induce investors to purchase the securities of AMI, artificially stimulated the market in this stock, made false and fraudulent statements, distributed false and misleading brochures, press releases, etc., and caused dividends to be issued which were not in conformity with law.

■ Given the conclusions as found by the jury, well documented by the record, and not contested on appeal that McDaniel was an active participant in the scheme, his argument that he was not shown to have used the mails, and that the mails were not used until after the sales had been consummated, cannot prevail. The record is replete with evidence that the mails were used regularly. The Government presented witness after witness who testified that they had purchased stock in the swindle and had received the confirmations, and in some instances the registered stock through the mails. This was not a mere incidental use of the mails or a use made by outsiders after the fraud was consummated. The mails here were used during the scheme and afterwards. It may not have been clearly shown that the appellant knew that the confirmations and stock certificates were to be mailed, but the mailings were such an integral part of the transactions that the use of the mails for their delivery should have been foreseen and contemplated.

■ The evil at which the Securities Act is directed is the fraud in the sale of securities. That being the congressional purpose and intendment to be covered, the impact of fraud in relation to sales should be considered in making practical application of the Act to a given set of facts. In other words, a scheme to defraud in relation to a sale of securities, and the use of the mails in consummation thereof, is the gist of the crime. The use of the mails need not be central to the scheme to defraud. United States v. Sampson, 371 U.S. 75, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962); Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946); United States v. Cashin, 281 F.2d 669, 2 C.C.A. (1960); United States v. Monjar, 47 F.Supp. 421 (D.C.Del.1942), aff'd 147 F.2d 916 (3 C.C.A.1944), cert. den. 325 U.S. 859, 65 S.Ct. 1192, 89 L.Ed. 1979 (1945).

Pereira, supra 347 U.S. 1, 74 S.Ct. 358, is particularly applicable to the facts here. There, the Supreme Court said:

"Where one does an act with knowledge that the use of the mails will follow in the ordinary course of

business, or whether such use can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used."

▬▬ Appellant relies chiefly on Kann v. United States, 323 U.S. 88, 65 S. Ct. 148, 89 L.Ed. 88; Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L. Ed.2d 1277; Getchell v. United States, 282 F.2d 681, 5 C.C.A. These cases are patently distinguishable on their facts and the law applicable, and this is made manifest when we realize that here the mails were used prior to, and as a step toward, the receipt of the fruits of the fraud. To paraphrase from the Supreme Court's holding in Sampson (371 U.S. 75, 83 S.Ct. 173), we are unable to find anything in Kann or Parr or Getchell that suggests an automatic rule that a deliberate, planned use of the mails after the victim's money had been obtained can never be for the purpose of executing the scheme. It matters not whether McDaniel himself did the mailing; the use of the mails by his brokers must have been fully contemplated by him, and attributed to him. We are, of course, required to view the evidence in the light most favorable to the prevailing party, and viewed in that light we unhesitatingly conclude that there was substantial evidence in the record to support the conviction on each count.

Appellant vigorously insists that the admission of Government's Exhibit 986 entitled "Transactions Detrimental to Ambrosia Minerals, Inc." into evidence was error. The exhibit was received during the testimony of John V. Person, who as President of AMI had directed that the document be prepared. Person testified that it was prepared strictly as an office memorandum and that it was a record of the company made in the course of the business of the corporation. It was prepared by various officers of the company. Appellant was a member of the Board of Directors of AMI at the time it was resolved to instigate the investigation and this exhibit is the fruit of that investigation. Business corporations often do considerable self-analysis in order to keep a taut ship. The document was originally offered as an admission against Haynes. Despite his objection to the use of the term "admission," counsel for Haynes joined in the offer of the exhibit. After further colloquy, the Court admitted the document under the Federal Business Record Act, 28 U.S. C.A. § 1732(a).[2]

▬▬ Counsel for McDaniel relies heavily on Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645. In Palmer the Supreme Court affirmed the Court of Appeals for the Second Circuit, which had in turn affirmed the trial court in excluding a written statement made by a railroad engineer (deceased at the time of the trial) concerning a grade crossing accident which was the subject matter of the suit. The document which was offered on behalf of the defendant railroad is the reverse of the present situation where the document in question was admitted by the trial court. The distinction is of some importance since the trial judge has an area of discretion in determining admissibility of documents as business records, and a case affirming an exclusion is not necessarily authority to reverse for an admission. Besides, in the present case the motive which made the document suspect in Palmer is not present. The memorandum was not designed to be put into evidence, and hence to be self-serving. Instead, it was a summary or history based upon the corporate records for use by retained counsel in advising the company. Thus, those who prepared it had every motive to make it truthful,

2. *28 U.S.C.A. § 1732(a).*
 "(a) In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such a memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter."

complete and accurate. All the hallmarks of authenticity surround this document. The trial court committed no reversible error in admitting Government's Exhibit 986.

 Appellant next argues that the admission of Exhibit 986 constituted a denial to him of his right of confrontation as guaranteed in a criminal prosecution. The United States Constitution, Amendment VI. This question may arise when a document falling under 28 U.S. C.A. § 1732(a) is offered at the trial: Does that Statute transgress the right of confrontation granted by the Sixth Amendment? We do not believe that all documents covered by the Statute in all cases are admissible in a criminal trial, but the trial judge has the duty to determine in each instance whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation. The trial judge made no error here, and it has been customarily held that the right of confrontation may not be invoked to exclude evidence otherwise admissible under well-established legitimate exceptions to the hearsay rule. Kay v. United States, 255 F.2d 476, 4 C.C.A. (1958); Matthews v. United States, 217 F.2d 409, 5 C.C.A. (1954); United States v. Leathers, 135 F.2d 507, 2 C.C.A. (1943); 5 Wigmore, Evidence, 1397.

 It is next argued that the trial judge committed reversible error in overruling appellant's request that the Court's charge be reduced to writing and furnished to the jury for use during its deliberations. It is frequently desirable that instructions which have been reduced to writing be not only read to the jury, but also handed to the jury. This course is required in some states, but the United States Courts are not compelled to do so. The determination of whether or not to submit a charge in writing was within the discretion of the trial court.

 Appellant also assigns as error the Court's admitting into evidence Government's Exhibit 1256, 1257, 1258, 1259, 1260, 1263, 1264 and 1265. The exhibits in question are summaries of records which were examined by the Government's witness, James A. Swink, a certified public accountant and a member of the staff of the Securities and Exchange Commission. The exhibits were based upon the records of appellant and they were furnished to Swink at appellant's office with appellant's permission. The actual records of which the exhibits are summaries were in evidence. Mr. Swink is an expert witness and he was entitled to testify as to his conclusions concerning these records. The fact that his conclusions differed from those of the Accounting Firm of Ernst and Ernst was a matter of relative weight and was for the jury. Mr. Swink explained the reasons for the difference between his figures and those of Ernst and Ernst, who had treated results of the sham transactions of McDaniel and Mellen as profits. It was for the jury to accept or reject Mr. Swink's conclusions. The rule is that a summary of books and records is admissible, provided cross-examination is allowed and the original records are available. Here, the records of which the exhibits are summaries were in evidence and the man who prepared them was available for cross-examination before the jury. Cooper v. United States, 5 C.C.A., 1937, 91 F.2d 195; Kolbrenner v. United States, 5 C.C.A., 1926, 11 F.2d 754; Greenhill v. United States, 5 C.C.A., 1962, 298 F.2d 405. Appellant cites and relies heavily on Lloyd v. United States, 226 F.2d 9, 5 C.C.A., 1955. The reversal in that case was not pegged on any error in connection with the use of summaries, but of improper admission in evidence of an offer to compromise. It is perfectly proper that litigants be permitted the use of illustrative charts to summarize varying computations and to thus make the primary proof upon which such charts must be based more enlightening to the jury. The district judge did not abuse his discretion by permitting the use of these summaries.

As to the other errors assigned we have carefully reviewed the record and con-

clude that the alleged errors have not been substantiated. The defendant had a fair trial. The verdict is adequately supported by the evidence. The charge was fair and accurate; and the errors assigned being without validity, the judgment is affirmed.