NEWARK ELECTRONICS CORPORATION, Plaintiff-Appellee, *v.* THE CITY OF CHICAGO, Defendant and Counter Plaintiff-Appellant—(SPEEDWAY WRECKING CO., Defendant and Counter Defendant-Appellee.)

(No. 52891;

First District—October 23, 1970.

Raymond F. Simon, Corporation Counsel, of Chicago, (Marvin E. Aspen and RocLyne E. LaPorte, Assistant Corporation Counsels, of counsel,) for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago, (Howard T. Brinton, of counsel,) for counter-defendant-appellee.

Perry M. Berke, Prince, Schoenberg & Fisher, both of Chicago, for plaintiff-appellee.

Mr. JUSTICE SMITH delivered the opinion of court:

■■ All men are equal in the eyes of the law, only sometimes, to steal a phrase, some are more equal than others. Take the case of codefendants in a negligence action. Both may be "equal" so far as liability to the plaintiff, yet one can force the other to foot the bill. This comes about when one of the defendants is guilty only of passive or technical negligence, so-called, and the other's negligence is active. The active one, in effect, can become an indemnitor to the technical defendant—the indemnitee. By the same token, if one codefendant is absolved of negligence—not guilty, he can be home free not only as to the plaintiff, but also as to his codefendant, assuming, of course, that the question of each other's negligence was actually raised and determined. It is, as we know, up to plaintiffs in the first instance to pick their defendants, those left out can come in if they want to, and those already in can bring them in, also if they want to—it defies everyday experience that they don't know of each other, though anything is possible.

■■ When an issue of "whose fault is" is present, it behooves all codefendants (and maybe the plaintiff) to keep in mind the doctrine of *res judicata* and its offshoot, estoppel by verdict. Thus, if A sues B and C for negligence and obtains a verdict against C only, and C in conducting its defense actively sought to establish the negligence of B, and vice versa, C is estopped from asserting in a new action against B for indemnity that B was guilty of negligence—this for the very sensible reason that between them such issue has already been decided. One day, not two, is all C gets—in court, that is. Though we can articulate simply the related doctrines of *res judicata* and estoppel by verdict, their application in given situations, as we will see, is often difficult. The situation before us is in away different from the hypothetical we have just examined, but the dissimilarities in our opinion are more apparent than real.

Plaintiff, Newark Electronics, sued Speedway Wrecking and the City of Chicago for damages based on their alleged negligence in shutting off a water valve in a basement vault beneath a sidewalk and otherwise exposing the valve to the weather. During the winter the valve burst flooding Newark's nearby basement. The city filed an answer denying negligence and then filed a counterclaim against Speedway asserting the right of indemnity should it be found liable, that is, if a judgment should be entered against the city and in favor of Newark, then the amount of that judgment should be given in favor of the city and against Speedway. Speedway also denied liability on the complaint. Thus the issue of indemnity, and, of course, Speedway's and the city's negligence or lack of it *vis-a-vis* Newark, was very much in issue and we need not worry about that aspect of the doctrine of estoppel by verdict which requires that a given issue be actually litigated and determined—not that it might or

could have been, which can fulfill a like requirement when the invocation of the parent doctrine of *res judicata* is sought. As it turned out, Speedway obtained a directed verdict on both the complaint of Newark and the counterclaim of the city, and Newark obtained a judgment against the city for $38,800.00. The city appeals this judgment and the one against it and for Speedway on its counterclaim for indemnity. Newark, the plaintiff, does not appeal the directed verdict for Speedway on its complaint. Neither does the city.

What hits one immediately following this recitation of what has happened is that there is now a *final* judgment in favor of Speedway and against the plaintiff on its complaint—a judgment no one appeals—and a quintessential part of this judgment, is a finding that Speedway did not negligently cause plaintiff's damages. Is this finding for Speedway binding on the city? This is the crucial question, for does not the city really call in question this judgment when it appeals from the directed verdict for Speedway on its counterclaim?

■■ Let us examine all of this a bit more closely. In order to prevail on its counterclaim, the city had to prove acts of active negligence on the part of Speedway, that Speedway actually and actively caused Newark's damage, and that the city's participation was technical or passive —if both were "active", there would be no indemnity as between them. Likewise, to prevail against Speedway, Newark must prove negligence— any kind! However, what if Speedway is absolved of negligence *vis-a-vis* Newark in spite of an earnest endeavor by it and the city to prove otherwise, how could Speedway logically be found liable to indemnify the city on its counterclaim? Negligence *vis-a-vis* Newark is the gist of the city's action against Speedway. It is legally (and logically) impossible, in our opinion, for Speedway to be absolved of negligence as to the plaintiff, and in the same action be held liable for indemnity to the city, assuming as we can, the city's liability to the plaintiff. Such a result is an incongruity—an anomaly—which could not stand. Either Speedway is guilty of negligence—active or passive—as between it and Newark, or it is not. There is no middle ground—and if third parties were present contending with plaintiff that Speedway was at fault, they would be bound as is plaintiff by a contrary result. Being bound they would be estopped, in our opinion, from reasserting it in a subsequent action—an action over—*or here,* since this judgment for Speedway is now final—final as to both Newark and the city, since neither appeal.

■■ Whether the court below was right or wrong in directing a verdict for Speedway on the complaint of plaintiff is in our opinion beside the point so far as we are concerned. If this is so, how can we redress the error, if there was one, and as we are asked to do, on the directed verdict

for Speedway on the city's counterclaim? What if we did take it up, and say, remand it for trial so that the issue of indemnity as between the city and Speedway could be determined? If we did so, the trial court would be immediately confronted, *as we are here*, with a final judgment where the parties are the same and the same subject matter is the basis for the action, though the cause of action itself is different. Under the doctrine of estoppel by verdict does not such final (and prior) decision operate to estop the city from relitigating those matters in issue—here the issue of Speedway's negligence *vis-a-vis* plaintiff? Being so confronted, the trial court could no nothing but direct for a second time a verdict for Speedway on the counterclaim. In like manner, we are confronted with this final judgment for Speedway, which, in our opinion, rules out any other result but affirmance of the directed verdict for Speedway on the counterclaim and for the same reason that the court on remand would have to redirect a verdict for Speedway. We will not bother to answer the conundrum posed if by some happenstance we would instead reverse with directions to enter judgment on the counterclaim for the city and against Speedway for the same amount entered against the city and in favor of Newark—$38,800.00! If we did so we had better do something about the judgment for Speedway on plaintiff's complaint, but the stark fact is, we can't.

■■ Though the names of the causes of action may be different, but where, as here, the parties are the same and the same subject matter is the basis for the action, the first decision operates as an estoppel as to those matters in issue and on which there has been a determination. Thus we cannot slough off the final decision on plaintiff's complaint absolving Speedway of negligence for to do so would be to create the anomaly just posited—an anomaly not countenanced by the doctrine of estoppel by verdict. To go back to our conundrum, if we did reverse or on retrial the city prevailed, we would have the anomaly of a decision absolving Speedway of negligence and another and later decision saying in effect that such final absolution was not very final after all. This cannot be. Courts, at least, must accept the final as final! We must take a final judgment as it is, its content, meaning, portent, and effect, if asked, as we have been here—and it is a bar to considering the city's appeal on the directed verdict on its counterclaim.

Speedway does indeed argue that the appeal on the counterclaim be not considered because, it says, the city is estopped from now asserting that Speedway was guilty of negligence—something it must assert if it is to prevail on its counterclaim. As we have implied, Speedway's position seems to us to be eminently sound. It is a reasonable extension of the holding in *Chas. Ind. Co. v. Cecil B. Wood, Inc.*, 56 Ill.App.2d 30, 205

N.E.2d 786. This was an action over—a subsequent action—for indemnity by Ind against Wood. In a prior action, a plaintiff had sought to impose liability on both of them. Ind while it did not file a counterclaim against Wood (which would be analagous to the city's counterclaim against Speedway), in conducting its defense actively sought to establish (as did the city here of Speedway) that the negligence of Wood and not Ind's caused plaintiff's injury. However, Wood, like Speedway, was absolved of negligence, and Ind, on the other hand, like the city here, was found liable to the plaintiff. It was there held that Ind was estopped by the verdict absolving Wood from again asserting in a subsequent action for indemnity that Wood was guilty of negligence and thus liable to it. We quote:

"An examination of the entire record in this case leaves no doubt that the plaintiffs in the first suit earnestly sought to impose liability on the three defendants; * * * There further is no doubt that Ind, in conducting its defense, actively sought to establish the negligence of Wood * * *.

The parties here do not dispute that if Ind were guilty only of technical or passive negligence by virtue of the active negligence of Wood imputed to it, Ind would then have a right to indemnity against Wood. But just as certainly, Ind cannot prevail upon this theory unless Wood is first found guilty of negligence. It is an essential part of the jury's verdict in the first case that Wood was found to have been guilty of no negligence giving rise to plaintiffs' injuries. Ind, having, in fact, actively sought in the first suit to establish responsibility upon Wood for the injuries complained of there, is now estopped from again asserting that it was the negligence of Wood which caused these injuries. The jury's verdict has settled that matter. Ind did not appeal that judgment imposing liability solely on it, although it here suggests not only that the finding of no negligence on the part of Wood is contrary to the manifest weight of the evidence, but also that a contrary finding should have been made as a matter of law. Having once litigated that question, and having failed to appeal an adverse decision, Ind may not now seek a second day in court in the form of this action to relitigate the same question." Chas. Ind. Co. v. Cecil B. Wood, Inc., 56 Ill.App.2d 30, 38, 205 N.E.2d 786, 790.

The only difference, as we see it between the Ind case and this one, is that the city did not wait to see how it and Speedway would fare, vis-a-vis the plaintiff and each other, but sought an answer on the question of indemnity immediately as it properly could. Of course, if the city had waited and had actively sought to affix responsibility on Speedway in the principal suit, and then sued Speedway when the latter won and it lost,

the situation would be the same as that in the Ind Co. case. Naturally, if both had been held liable to plaintiff, either could then litigate as between them the question of who should indemnify whom, if at all. Regardless, where the parties are the same and the same subject matter is the basis for the action, though the cause of action may be different—indemnity vs. tort—the prior decision operates, as we have said, as an estoppel as to those matters in issue or points controverted and is conclusive as to those questions actually raised and determined therein. Whether the city could have appealed the directed verdict for Speedway on plaintiff's complaint has not been argued. However, it clearly could. The rule is that a party may appeal if he is injured by a judgment or will be benefited by a reversal. A reversal of the judgment here absolving Speedway of negligence would, at the very least, benefit the city in any attempt to seek contribution from Speedway.

As we have seen, the city also appeals the judgment for Newark and against it in the amount of $38,800.00. The errors assigned relate to the admission of expert testimony and an exhibit itemizing Newark's damages. ■■ The expert testimony objected to involved an inquiry as to why the valve burst. The argument goes that the experts were not qualified to give an opinion that the valve burst from freezing. We can dispose of this quickly. Regardless of their qualifications in this field—they were eminently qualified in others—their respective opinions merely coincided with what all parties agreed to be the trouble—that water froze in the valve causing it to rupture. This was not really in issue—the real issue, as we see it, was who created the condition which led to the freezing. And the experts had nothing to say on this score—and properly so. The question of who negligently caused or created the condition was something plaintiff had to prove, but the testimony of the experts had nothing to do with this, and, as we have said, their testimony even if improper only added two more voices to an assumption that was admitted by all parties.

The second error involves Supreme Court Rule 236 having to do with the admission of business records into evidence. This rule provides that any writing or record made as a memorandum or record of any act, transaction, occurrence or event shall be admissible as evidence of such, If made in the regular course of business, and if it was the regular course of the business to make such memorandum or record at the time of such act, transaction, occurrence or event, or within a reasonable time thereafter. ■■ The argument goes that a compilation-computation of water damaged items was not made in the regular course of business because it was not the business of Newark to make such compilation-computa-

tions. A literal reading of the rule would support this stance as correct. Obviously, Newark's business is not being flooded, even periodically—which might help under a literal interpretation. But if periodicity of flooding helps, the absurdity of a literal interpretation in our context is immediately apparent. Newark's business is selling merchandise via catalogs, and both suffered water damage. However, having suffered such damage, even for the first time, it seems reasonably businesslike to us to ascertain the damages by making a compilation-computation of such which flowed from the flooding (event) since such would be in the regular course of business (ascertaining damages) and it would certainly be in the regular course of business to make such a record at the time of such flooding (event) or within a reasonable time thereafter. In our opinion, prior, regular floodings are not a precondition for the admission of a compilation-computation of a business' first experience with a disaster in order to make such admissible within the confines of Rule 236. Being in business—any kind—demands records for the routine day-by-day transactions, but regular, in our opinion, need not be day-by-day as to transactions or events that do not occur and have not occurred. A given event, transaction, or occurrence may occur only once and simply because it has never happened before it is not a contradiction to say that in making a record of such event, transaction or occurrence, singular though it may be, it was not made in the regular course of business. Because a company may eschew damages—who does like them—does not mean that suffering same, however, bizzare, is something unexpected or at least not to be expected in business.

■■ But, the city argues that the compilation was made with litigating in mind, or at the very least, to be used if a dispute arose as to "how much." Thus, since they were made with an eye toward possible litigation, their sanctity and integrity is suspect. But if we look at it that way, all business records have their basis in the recordation of day-to-day occurrences and transactions and it is safe to say that such memorialization has as one of its uses the resolution of possible future disputes as to exactly what a particular occurrence, transaction or event partook of.

■■ In allowing the admission of this compilation to stand, we should not be taken to mean that any and all itemizations or recordations of events or transactions will always be admissible. In every case, we should scrutinize closely, as we have here, the circumstances and methods employed in the making of the compilation to establish its integrity and hence, its probative value. Also, it should be kept in mind that we sit in review of an exercise of discretion—the compilation has been admitted into evidence, and the trial court certainly has some discretion in either allowing or denying its admission—hence, only where discretion has been

abused can we do anything about it. It is not what we would have done had the issue been initially presented to us. As was said in *McDaniel v. U.S.* (C A 5th, 1965), 343 F.2d 785:

"＊ ＊ ＊ The distinction is of some importance since the trial judge has an area of discretion in determining admissibility of documents as business records, and a case affirming an exclusion is not necessarily authority to reverse for an admission."

We should also be mindful that the rule contains its own prophylaxis—that other circumstances "of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility."

The judgments appealed from are affirmed.

Judgments affirmed.

CRAVEN, P. J., and TRAPP, J., concur.