UNITED STATES of America,

v.

Robert L. COLEMAN, Appellant.

No. 79–1238.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 11, 1979.
Decided July 17, 1980.
Rehearing Denied Aug. 29, 1980.

Michael E. Jaffe and Charles R. Claxton, Washington, D.C. (appointed by this Court), for appellant.

Martha P. Rogers, Asst. U. S. Atty., with whom Carl S. Rauh, U. S. Atty., John A. Terry, Michael W. Farrell and David S. Krakoff, Asst. U. S. Attys., Washington, D.C., were on the brief, for appellee.

Also Joseph E. Sandler, Washington, D.C., entered an appearance for appellant.

Before MacKINNON and WILKEY, Circuit Judges and GORDON *, United States District Judge for the Western District of Kentucky.

Opinion for the Court filed by Circuit Judge MacKINNON.

* Sitting by designation pursuant to 28 U.S.C. § 294(c).

1. The indictment, dated August 8, 1978, stated as follows:
FIRST COUNT:
   On or about April 19, 1978, within the District of Columbia, ROBERT L. COLEMAN did unlawfully, knowingly and intentionally distribute 1,535 milligrams of heroin and other substances, a Schedule I narcotic drug controlled substance.
      (Violation of Title 21, U.S. Code, Section 841(a))
The four other counts were identical except as to date and minor differences in the quantity of heroin, etc.

MacKINNON, Circuit Judge:

Robert A. Coleman was convicted by a jury on five counts of an indictment[1] charging the sale of heroin, a controlled substance, to an undercover police officer in violation of 21 U.S.C. § 841(a).[2] He was sentenced to five concurrent terms of imprisonment of 20 months to five years.

Coleman appeals, asserting as error: (1) the admission into evidence of Drug Enforcement Agency (DEA) forms containing a chemical analysis and a summary of information relating to the purchase of the material being analyzed; (2) the admission into evidence of lock-seal envelopes used to transport suspected drug samples for testing which contain notes made by the purchasing undercover police officer relating to the date, time and location of sale, and an identification of the seller by a "John Doe" number;[3] (3) allowing a DEA *supervising* chemist to testify at trial that the purchased substance was analyzed as heroin, in lieu of the actual *analyzing* chemist, on Counts III, IV and V of the indictment and (4) that the unavailability of a preliminary hearing transcript resulted in substantial prejudice.

We find no reversible error in Coleman's conviction on Counts I and II, set aside the judgment of conviction on Counts III, IV and V of the indictment, and remand this case to the District Court for resentencing on Counts I and II, as to which the conviction is affirmed.

2. 21 U.S.C. § 841(a) provides:
   (a) Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally—
   (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
   (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

3. *See* n.4, *infra.*

## I

On five occasions during the spring of 1978, David Wright, an undercover officer with the Metropolitan Police Department, made purchases of heroin from a man he identified in his notes as "John Doe 17".[4] Each purchase was of a "quarter spoon" of heroin, a "street" term used to refer to a quantity roughly corresponding to a quarter of a tablespoon, or 1500–2000 milligrams.[5] The selling price in each transaction ranged from $80–90. Officer Wright made payment using police funds.

After each purchase, Officer Wright initialed the cellophane-wrapped package, using the band of tape closing it as a writing surface. He also filled out the information required on the back of the lock-seal envelope into which the suspected narcotic sample was placed and prepared notes on his daily activity sheet. These materials were then turned over to his supervising control officer, Detective Alan Penberg. Chemical analysis of the material purchased from "John Doe 17" identified it as containing heroin.[6]

At trial, Officer Wright identified appellant James Coleman as "John Doe 17." In defense Coleman contended he was misidentified and produced alibi witnesses for the dates of four of the sales. Appellant also testified in his own defense.[7]

After a jury trial, appellant was convicted on all five counts of the indictment. He was sentenced to five concurrent terms of imprisonment of 20 months to five years.

## II

### A

The first issue is whether it was error to admit into evidence DEA forms containing a chemical analysis of the substance purchased by the undercover agent, and the lock-seal envelopes used to transport suspected drug samples for testing, which contained notes made by the purchasing undercover police officer relating to the date, time, location of sale, and identifying the seller by a "John Doe" number.

The trial court apparently admitted these materials under an exception to the hearsay rule for "records of regularly conducted activity" or "public records and reports."[8]

Appellant contends that police reports are "*never* admissible on behalf of the Government in a criminal action,"[9] citing our decision in *United States v. Smith*, 521 F.2d 957 (D.C.Cir., 1975) and cases from other circuits[10] in claimed support of that assertion.

*Smith*, in our view, is inapplicable to the DEA forms and lock-seal envelopes involved in this case. While *Smith* held that police reports were generally inadmissible when offered by the prosecution, the *Smith* rule has distinct parameters, which the court noted, in outlining the basis for its decision:

> We hasten to specify the limits of our decision. We do not hold that a police record is admissible in a criminal proceeding as a business record, either as substantive evidence or for impeachment purposes, whenever the record meets the test of trustworthiness. We hold only

4. Trial transcript ("Tr. II") of December 12, 1978 at 147. Because the trial transcript is not numbered consecutively throughout, reference will be made to the different transcripts as follows:

　Tr. I December 11, 1978
　Tr. II December 12, 1978 pp. 1–239
　December 13, 1978 pp. 241–449/17
　Tr III December 13, 1978 pp. 441–448
　In his undercover role, Officer Wright made narcotics purchases from a number of individuals; he identified them by "John Doe" and a number. Tr. II 59–60.

5. Tr. II 59–60.

6. Tr. II 64–65, 67, 70–71, 79–83, 142, 161–62.

7. Tr. II 270–73, 275, 293, 310–18, 320–23, 335–39, 352–63, 363–392. Tr. III 3–51.

8. F.R.Evid. 803(6), (8). Tr. II 141–42.

9. Appellant's Br. 16 (emphasis in original).

10. *United States v. Ware*, 247 F.2d 698 (7th Cir.1957); *Sanchez v. United States*, 293 F.2d 260 (8th Cir.1961); *United States v. Brown*, 451 F.2d 1231 (5th Cir.1971); and, *United States v. Frattini*, 501 F.2d 1234 (2d Cir.1974). Appellant's Br. 18–20.

that such a record is so admissible *when offered by a criminal defendant to support his defense.* We do not believe that such records may properly be so employed by the prosecution. While confrontation clause values figure in our reasoning, the primary basis for the distinction is the "litigation records" doctrine of *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). In *Palmer* the Supreme Court affirmed a ruling by the Second Circuit that an accident report prepared by a since-deceased railroad engineer and offered by the railroad in its defense in a grade-crossing collision case did not qualify as a business record since the report was "dripping with motivations to misrepresent." 2 Cir., 129 F.2d 976, 991 (1942). The doctrine has since been applied to deny the business records exception to any document prepared with an eye toward litigation when offered by the party responsible for making the record.[11]

A footnote to this textual passage amplifies the basis of the court's concern:

Many traditional hearsay exceptions also operate as exceptions from the demands of the confrontation clause of the Sixth Amendment. *Mattox v. United States*, 146 U.S. 140, 151, 13 S.Ct. 50, 36 L.Ed. 917 (1892) (dying declarations); *Mattox v. United States*, 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409 (1895)(testimony of deceased witness who had testified at former trial); 5 *J. Wigmore, Evidence* § 1397 (3d ed. 1940). Indeed, we have typically applied the business records exception in criminal cases without insisting that the confrontation clause demands the testimony of the maker of the record. *See, e. g., Gass v. United States*, 135 U.S.App.D.C. 11, 416 F.2d 767 (1969) (hospital records); *Wheeler v. United States*, 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), *cert. denied*, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140 (1954) (same).

However, the admission of police records, which may at times contain written summaries of the prosecution's entire case against a defendant, *see* note 22 *infra*, poses more difficult Sixth Amendment problems. It is clear that the mere existence of a hearsay exception does not cause the confrontation clause to recede. *California v. Green*, 399 U.S. 149, 156, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Thus confrontation values have been found violated even when evidence was admitted under arguably recognized hearsay exceptions. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The circuits have split on whether the business record exception always operates consistently with the demands of the Sixth Amendment. *See United States v. Haili*, 9 Cir., 443 F.2d 1295 (1971) (yes); *United States v. Leal*, 9 Cir., 509 F.2d 122 (1975) (yes); *McDaniel v. United States*, 5 Cir., 343 F.2d 785 (1965) (no). We think the Fifth Circuit view is the better. In *McDaniel* the court held:

We do not believe that all documents covered by the [Business Records] Statute in all cases are admissible in a criminal trial, but the trial judge has the duty to determine in each instance whether such documents are constitutionally admissible under the Sixth Amendment guarantee of confrontation.

343 F.2d at 789. Such a balancing test is clearly appropriate. While it might be proper to admit a police record as a business record to prove the date an automobile theft has been reported to the police, *United States v. Wolosyn*, 9 Cir., 411 F.2d 550 (1969), *see* note 23 *infra*, it would strike at the core of the Sixth Amendment to admit a police report summarizing the prosecution's entire case against a defendant in the absence of the maker of the record. Such a procedure would do no less than allow the prosecution to proceed without allowing the defendant the opportunity to cross–examine what may be his sole accuser. *Cf. Barber v. Page, supra; Pointer v. Texas, supra.* While it

---

11. 521 F.2d at 965–66 (footnote 19 omitted) (emphasis in original).

may be a closer question whether such evidence is admissible if the maker testifies and is subjected to cross–examination, we do not attempt an answer since the record would be inadmissible in any case under the *Palmer* doctrine discussed in text.[12]

*Smith* then, was, concerned that a summary of the government's case against a criminal defendant would be admitted into evidence. Similarly, in *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), identified by *Smith* as the primary basis for excluding police reports when offered by the prosecution, the concern is that a report prepared with an eye towards litigation when offered by the party responsible for making the record, may encourage misrepresentation. We do not feel that *Palmer*, nor this aspect of *Smith*, precludes the admission of the DEA forms nor of the lock–seal envelopes since they contain only skeletal information, and are prepared not solely with an eye towards presentation, but towards preserving a record of the chain of custody.

The purpose of admitting the lock–seal envelopes and DEA forms was to prove the chain of custody from Officer Wright through the analyzing chemist. Failure to do so would have left a missing link in the chain of custody. *Novak v. District of Columbia*, 160 F.2d 588 (D.C.Cir.1947); *Smith v. United States*, 157 F.2d 705 (D.C.Cir. 1946). While these forms have certain indicia of "police reports" the appellant was not prejudiced by their admission on the central issue in this case of identification. Rather, the materials make only limited reference to the actual purchase with the seller being identified by a "John Doe" number. Officer Wright testified at trial and was subject to full cross–examination.[13]

Appellant had the option of stipulating to the identity of the purchased substance as heroin. At trial he chose, as was his unquestioned right, to put the government to its burden of proof on each and every issue required for a conviction on these charges since the prosecution must overcome the presumption of innocence attributed to the defendant. *Taylor v. Kentucky*, 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1977); *Robertson v. United States*, 364 F.2d 702, 704 (D.C.Cir.1966). Additionally, the information on the lock–seal envelopes was merely cumulative evidence as to matters on which testimony was given by the police officers. *United States v. Wiggins*, 530 F.2d 1018, 1022 (D.C.Cir.1976). The government met its burden; and the jury convicted appellant on all five counts of the indictment. Appellant, having placed the government to its proof, may not now use that to his tactical advantage by complaining that the admission of the lock–seal envelopes and DEA forms was error since only that documentation would effectively satisfy the chain of custody requirement.

### B

Although the three notecards introduced into evidence are in a different category than the lock–seal envelopes or the DEA–7 forms just discussed, we again conclude that no error was committed in introducing these materials into evidence.

Exhibit 6 is a notecard prepared by Detective Penberg, Officer Wright's supervisor, on June 13, 1978, when Detective Penberg stopped the appellant and asked him to produce identification. Coleman produced his driver's license, and Detective Penberg recorded the information from the license on the notecard.[14] Detective Penberg verified the fact that the individual to whom he was speaking was in fact the person to whom the driver's license was issued by the photograph on the driver's license.

12. *Id.* at n.20.

13. Tr. II 53–160, 409–415.

14. Exhibit 6 is a light blue notecard, with the following notations in handwriting:

```
                              5'7"      135
Coleman, Robert Lee
          1–22–53
5:15 pm         4932 C St., SE
F/O 434 Ridge St., NW   539–70–0453
```

Exhibit 10 is a notecard on which Detective Penberg recorded his description of "John Doe 17" after receiving a description from Officer Wright and driving to the area in which Officer Wright had said "John Doe 17" was to be found.[15]

Exhibit 11 is also a notecard, prepared by Sergeant Ramon M. Gonzales, a supervisor in the Narcotics Branch of the Metropolitan Police Department; it records information received by Sergeant Gonzales in a telephone conversation with Officer Wright, on June 13, 1978, after Officer Wright made his fifth purchase from "John Doe 17."[16]

Appellant contends that these exhibits are hearsay and are not admissible under any exception to the hearsay rule. The government argues that both exhibits 6 and 10 were properly received into evidence as Detective Penberg was subject to cross-examination by appellant's trial counsel and his identification testimony, on these two dates, was highly probative. As to exhibit 11, containing Sergeant Gonzales's notes of his June 13, 1978 telephone conversation with Officer Wright, the government argues that the notecard does not contain hearsay but was, rather, a prior consistent statement properly admitted under F.R. Evid. 801(d)(1)(B) to meet the appellant's trial counsel's suggestion that a gold medal-

lion, allegedly worn by the defendant, was not included in Detective Penberg's description. Even though the defense counsel's question regarding the medallion was implicitly withdrawn, the government argues that the prosecutor was justified in introducing the exhibit to rebut the implication left by the aborted cross-examination that Detective Penberg had fabricated or embellished his prior description of the appellant by adding a reference to a highly distinctive medallion.

We conclude each of these exhibits was properly admitted into evidence.

▪ Exhibit 6, containing the information Detective Penberg recorded from Coleman's driver's license, qualifies as a statement "of identification of a person made after perceiving him," F.R.Evid. 801(d)(1)(C).[17] *Clemons v. United States,* 408 F.2d 1230, 1243 (D.C.Cir.1968) (*en banc*), *cert. denied* 394 U.S. 964, 89 S.Ct. 1318, 22 L.Ed.2d 567 (1969); *United States v. Hudson,* 564 F.2d 1377, 1379 (9th Cir. 1977); *United States v. Jones,* No. 77–1506 at 19–20 (D.C.Cir. March 28, 1979).[18]

▪ Exhibit 11, the notecard prepared by Sergeant Gonzales, qualifies as a prior consistent statement admissible under F.R.

---

15. Exhibit 10 contains the following text:

> 5–2–78 . . . App. 110 p.m. After picking up JD 17 XC & receiving a description, I went to 4th and Ridge where I observed JD 17 wearing short blue jeans, nylon jacket— blue with white stripes, comb in hair—he was on the corner. I walked north on 4th Street.

Tr. II 196–7.

16. Tr. II 204. At trial Sergeant Gonzales testified that the card contained an identification of "John Doe 17" as black, male, 24 to 30 years old, 145 to 150 pounds, dark complected, short hair, 5'7" to 5'10" tall, wearing a beige shirt, like a football jersey, with red shoulders, brown pants, tennis shoes, a gold medallion around his neck, and a watch on his left wrist.

Sergeant Gonzales further testified that on the back of the card was noted the statement that the subject had sold heroin to Officer

Wright, and at the point of sale had gone near an ice cream truck on the street.

17. F.R.Evid. 801(d)(1)(C) provides:

(d) Statements which are not hearsay. A statement is not hearsay if—
(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (C) one of identification of a person made after perceiving him . . .

18. Since prior identification has been extended even to cases where the identification was made on the basis of photographs, *U. S. v. Marchand,* 564 F.2d 983, 996 (2d Cir. 1977) *cert. denied* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *U. S. v. King,* 590 F.2d 253, 257 (8th Cir. 1978) *cert. denied* 440 U.S. 973, 99 S.Ct. 1538, 59 L.Ed.2d 790 (1979), allowing the police officers here to testify on the basis of an actual sighting of "John Doe 17" is well within the rule.

Evid. 801(d)(1)(B) [19] as it was introduced in the context of an implied challenge to the description of "John Doe 17." This rule allows admission of a prior statement made by a declarant which is "consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Trial counsel had earlier asked Detective Penberg, in reviewing the record, whether the medallion was mentioned; the question was then withdrawn. The inference of a change in description was necessarily left lingering.[20] Consequently, the card was properly admissible under these circumstances to demonstrate that the description of appellant, the central issue in this case, was unchanged for the period in question. *United States v. McGrath*, 558 F.2d 1102, 1107 (2d Cir. 1977) *cert. denied* 434 U.S. 1064, 98 S.Ct. 1239, 55 L.Ed.2d 765 (1978).

Exhibit 10 is similarly admissible. The description which Sergeant Gonzales recorded from his telephone conversation with Officer Wright was the basis for the identification he and Detective Penberg made. As with exhibit 6, the notes confirm his testimony in the face of an implied charge of fabrication. The notes contain a constant description of the narcotics dealer identified by Officer Wright as "John Doe 17." There was no error in their admission into evidence. There was no abuse of the trial court's "great discretion in determining if a prior consistent statement is authorized to rebut a defense charge of recent fabrication." *United States v. Zito*, 467 F.2d 1401, 1404 (2d Cir. 1972).[21] Even where the suggestion of contradiction is only imputation of an inaccurate memory, a prior consistent statement is admissible to rebut the inference. *Applebaum v. American Export Isbrandtsen Lines*, 472 F.2d 56, 61 (2d Cir. 1972); *United States v. Knuck-*

*les*, 581 F.2d 305, 313–14 (2d Cir.) *cert. denied*, 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978).

In addition, in all three cases involving these challenged exhibits, the makers of the notecards testified and were cross-examined. The concern in *Smith* that the government might submit its entire case by means of unchallenged documentary evidence is not present here.

### III

The remaining major issue in this appeal is whether the trial court committed reversible error in allowing a *supervising* Drug Enforcement Agency chemist to testify regarding the analysis of the substances involved in three counts of the indictment. Although the *analyzing* chemist testified at trial regarding the substance involved in the purchases alleged in Counts I and II of the indictment, for unspecified reasons the analyzing chemist was not available at trial to testify regarding the analysis of the substances involved in the purchases alleged in Counts III, IV and V of the indictment. As to those chemical analyses, a supervising chemist for the Drug Enforcement Agency relying on DEA records testified that the purchased material was heroin.

Appellant alleges violations of both the Federal Rules of Evidence and his Sixth Amendment right to confront his accusers by allowing the supervising chemist to testify. The Government challenges the validity of the appellant's argument.

The cases are not in agreement on this issue. In *United States v. Oates*, 560 F.2d 45, 65–84 (2d Cir. 1977) the Second Circuit held it to be prejudicial error to admit worksheets and a United States Customs Service report identifying a seized substance as heroin.

---

**19.** F.R.Evid. 801(d)(1)(B) provides:
    (d) Statements which are not hearsay. A statement is not hearsay if—
    (1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered

to rebut an express or implied charge against him of recent fabrication or improper influence or motive . . .

**20.** Tr. II 199–200.

**21.** N. 19, *supra*.

However, the Ninth Circuit has held that computer cards generated by a customs inspector entering the license number of all vehicles passing through a station on the Mexican border admissible as a public record, under F.R.Evid. 803(8). The Ninth Circuit did not consider the simple recordation to contain an element of adversarial confrontation which might cloud the custom inspector's perception. *United States v. Orozco*, 590 F.2d 789 (9th Cir., *cert. denied* 442 U.S. 920, 99 S.Ct. 2845, 61 L.Ed.2d 288 (1979)). A similar argument is made here by the Government in support of the admissibility of the DEA analysis forms.

Appellant was found guilty and sentenced concurrently on all of the counts of the indictment. Because of the difficult questions raised by these issues, in the interest of justice and judicial economy we do not reach the merits, but instead vacate the judgment of conviction on Counts III, IV and V of the indictment. *United States v. Hooper*, 432 F.2d 604 (D.C.Cir.1970).

### IV

Appellant also contends that the unavailability of a transcript from the preliminary hearing, caused by a malfunction of the recording equipment, requires reversal of his conviction. We find no merit in this contention.

An unspecified malfunction of the tape recording equipment prevented the recording of the preliminary hearing, and concomitantly, transcription of the hearing. Appellant's trial counsel made a cryptic notation at the preliminary hearing indicating that Officer Wright had made a photographic identification of appellant as "John Doe 17". Appellant contends that the unavailability of the preliminary hearing transcript prevented impeachment of Officer Wright on the identification issue.

Officer Wright took the witness stand for *voir dire* examination on this point. He unequivocally denied that he made his identification of appellant as the seller identified in his notes as "John Doe 17" by reviewing photographs.[22]

Absent a significant risk of prejudice to the defendant, or reason to believe that the magistrate's office had made less than earnest efforts to preserve the preliminary hearing recording, the unavailability of a preliminary hearing transcript does not provide a basis for reversing a conviction. *United States v. Carpenter*, 510 F.2d 738 (D.C.Cir.1975). Neither of those factors is present here. The Government cannot be made the guarantor of the proper functioning of electronic equipment at the cost of setting aside criminal convictions.

### V

For the reasons above set forth, the judgment of the District Court with respect to Counts III, IV and V of the indictment is vacated and the case is remanded for resentencing on Counts I and II.[23]

*Judgment accordingly.*

---

22. Tr. II 409–15.

23. By such judgment we do not imply any error in the sentences imposed on Counts I and II or suggest any change therein, but merely remand so the District Court may be completely free to impose such sentence as it may consider to be proper in the circumstances.