COMMONWEALTH *vs.* BILLY EARL ROBINSON. April 10, 1985. *Identification. Evidence,* Cross-examination, Relevancy and materiality.

The claims of error in the conviction of the defendant Robinson of two counts of armed robbery can be treated without rehearsing all the evidence.

1. Gabriel Hanna, brother of the proprietor of Cozy Corner, a convenience store in Worcester, was tending shop on the night of June 27, 1983.[1] He testified on direct examination for the prosecution that the man who entered, shortly before closing time, was a black man, about six feet, four inches tall, with short hair and a long chin. Hanna also gave details of dress, dark glasses, etc. He recognized the man as a frequent customer whose name, however, he did not know. The man was carrying a rifle, aimed at Hanna. Hanna thought it was a joke, but hearing the command "move it" with the clicking of a round in the chamber of the weapon, he "took it seriously." The robber made off with about $200 in cash. Hanna said he gave a description of the man to the police when they arrived promptly

---

[1] Also present was another brother, Raymond, but his involvement and testimony were substantially the same as Gabriels, and need not be separately discussed.

on the scene. About an hour later, at the police station, he selected the defendant's photograph from an array (not claimed to have been improperly suggestive).

On cross-examination, Hanna was led to add that his on-scene description of the man included reference to a long chin and a moustache. On further cross-examination, Hanna was confronted with his statement, part of the police report made at the scene, which he had signed. There was no mention there of either feature.

On redirect, the Commonwealth offered a statement (contained in a further police report) that Hanna gave at the police station after he viewed the photographs and made his selection. This tallied in most respects with the description Hanna had given on direct including the long chin (but did not mention dark glasses or a moustache). Defense counsel objected to the introduction of this statement but did not assign a reason; on appeal there is argument that the statement was a "prior consistent statement" and hence inadmissible.

The defense has not taken proper account of *Commonwealth* v. *Weichell*, 390 Mass. 62, 72 (1983), cert. denied, 465 U.S. 1032 (1984), decided before the trial herein, which, in general accord with rule 801(d)(1)(C) of the Federal Rules of Evidence[2] and rule 801(d)(1)(C) of the Proposed Massachusetts Rules of Evidence, holds admissible a statement of identification, here used to confirm an in-court identification, where the declarant is available for cross-examination, as Hanna was in the present case. The Federal rule denominates such a statement nonhearsay. The rationale for the altered legal attitude represented by *Weichell* is set out therein and need not be repeated. See *United States* v. *Marchand*, 564 F.2d 983, 996 (2d Cir. 1977), cert. denied, 434 U.S. 1015 (1978); *United States* v. *Moskowitz*, 581 F.2d 14, 21 (2d Cir.) cert. denied, 439 U.S. 871 (1978); *United States* v. *Coleman*, 631 F.2d 908, 913 n.18 (D.C. Cir. 1980), and, generally, 4 Weinstein & Berger, Commentary on Rules of Evidence for the United States Courts and Magistrates 801-168 to 801-178 (1982); 4 Louisell & Mueller, Federal Evidence § 421, at 204-215 (1979); McCormick, Evidence 747-748 (3d ed. 1984); 4 Wigmore, Evidence § 1130, at 277-279 (Chadbourn rev. 1972).

The statement, having been correctly admitted, was subject to being attacked or defended in any permissible way. The defense took the line that Hanna mistakenly thought the robber to be the defendant (the customer)

---

[2] "(d) Statements which are not hearsay. — A statement is not hearsay if —

(1) Prior statement by witness. — The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him; . . ."

whose picture he later identified. Influenced, then, by the picture, says the defense, Hanna embellished his earlier impression, recorded in the first police report, by adding the "long chin," a distinctive mark; recorded this embellished version in his second statement, and finally testified to it from the stand.[3] On the other hand, one of the officers who had attended at the scene gave evidence for the prosecution confirming Hanna's testimony that he had mentioned the long chin at the time, although that did not appear in the first police report.

A related matter: The photograph selected at the police station was a "mug shot" actually consisting of full face and profile. The defense wanted the picture "sanitized," and so only the full face was put in evidence and reached the jury. Rather oblique language in the prosecutor's closing statement might be read to suggest that in that picture a long chin did not appear with any prominence; this would tend to negate the embellishment theory. The defense now complains that the prosecutor was being disingenuous because he knew that Hanna had seen the profile as well as the full face photograph and in the former the chin would appear more clearly. There may be something in this; we doubt, however, that the jury were much affected by the prosecutor's remark. There was no objection on the part of the defendant and on the whole we do not think this is a situation calling for remedy under *Commonwealth* v. *Freeman*, 352 Mass. 556, 564 (1967).

2. To return to the trial proper, the defense called Dr. Anthony DiStefano who testified that on the day of the crime the defendant visited him. He gave the defendant a prescription for percodan (a controlled substance) to deal with a toothache. Dr. DiStefano said he observed during the visit that the defendant's left forearm was swollen, although he did not examine or prescribe for it. This testimony might have some significance because Hanna testified earlier on cross-examination that he had noticed nothing unusual about the robber's hand and forearm, bared by a T-shirt. Similar testimony about a swollen hand was given by another defense witness, Jeanine Paul, at whose apartment at 27 Great Brook Valley Avenue, located within a short walk from the Cozy Corner, the defendant was found by the police a few hours after the robbery. Paul also testified, by way of proving an alibi, that the defendant had been at her place all evening as an onlooker in a card game (his hand, she said, was too swollen to hold cards). When asked if the defendant had been living at No. 27 or No. 25 Great Brook Valley Avenue she replied in the negative.

In rebuttal the prosecution put on Ronald Anderson, a druggist whose store was located next door to the Cozy Corner. He testified that Dr. DiStefano had written and he had filled thirty-seven prescriptions for the

---

[3] We need not consider whether on this view Hanna's statement in question could be received under the more conventional rule or "exception" as to the admissibility of prior consistent statements reflected in Federal rule 801(d)(1)(B) (quoted *supra* at note 2). Cf. *Commonwealth* v. *Tucker*, 189 Mass. 457, 479-485 (1905).

defendant from February to December, 1983 (including that for June 27, 1983). There was objection to the admission of this testimony about the prescriptions. On appeal the defense argues that it suggested a connection between Dr. DiStefano and the defendant for the unlawful provision of drugs, and so might have unfairly prejudiced the defendant's case. What thirty-six of the prescriptions called for was not disclosed, and in any event a doctor's prescription can validate what would otherwise be an unlawful possession. This aside, the evidence had distinct pertinence. It bore upon the doctor's capacity, unaided by written notes, to remember the particulars of the one visit out of many. It suggested frequent encounters and thus some association of Dr. DiStefano with the defendant that might engender bias or untruth in the testimony about the swollen forearm. Such impeachment would react upon Paul's like testimony. Impinging on Paul's testimony about where the defendant resided was the druggist's statement that the prescriptions showed the defendant's address as 25 Great Brook Valley Avenue.

*Judgments affirmed.*

*Thomas C. Federico*, Committee for Public Counsel Services, for the defendant.

*Daniel F. Toomey*, Assistant District Attorney (*Paul A. Losapio*, Assistant District Attorney, with him) for the Commonwealth.