**UNITED STATES of America,**
**Appellee,**

**v.**

**Theodore FRATTINI and Steven Cardile,**
**Defendants-Appellants.**

**Nos. 1086, 1087, Dockets 74–1262, 74–1288.**

United States Court of Appeals,
Second Circuit.

Argued May 31, 1974.

Decided Aug. 21, 1974.

Gilbert Epstein, New York City, for defendant-appellant, Frattini.

Philip R. Edelbaum, White Plains, N. Y. (Edelbaum & Bodnar, White Plains, N. Y., on the brief), for defendant-appellant Cardile.

Nicholas Figueroa, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the S. D. of N. Y., S. Andrew Schaffer, Asst. U. S. Atty., on the brief), for appellee.

Before MOORE, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Co-defendants Theodore Frattini and Steven Cardile appeal from convictions after a jury trial in the United States District Court for the Southern District of New York, Robert L. Carter, J., on two counts of distributing and possessing (with intent to distribute) cocaine, and conspiring to do so. 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), 846; 18 U.S.C. § 2. On February 14, 1974, the judge sentenced each defendant to a three year term of imprisonment on count 1, execution of which was suspended except for six months, and three

years of probation on count 2. On appeal, defendants press various claims of error. For reasons stated below, we reverse Frattini's conviction but affirm as to Cardile.

I

The charges involved here stem from a government agent's purchase of 56.35 grams of cocaine from Floyd M. Parton, a co-defendant who pleaded guilty to one count prior to trial and testified for the Government against appellants.[1] The prosecution's theory of the case—supported chiefly by testimony from the agent, Douglas Driver, and Parton—was that Parton functioned as middleman between appellants and the buyer, exchanging the drugs conveyed by the former for the purchase money ($1,700) provided by the latter. According to the Government's opening statement as well as Parton's evidence, Cardile was the one who actually supplied the drugs to Parton. Frattini participated in the transaction by negotiating with Parton and accepting the payment from him.

■■ During the trial, the judge allowed into evidence—over Frattini's objection—Government Exhibit Nine, a chemist's report on the cocaine bought by Agent Driver. Aside from the chemical analysis, signed by the chemist, the document contained a notation above the signature of Agent Driver that the material submitted for testing was received by defendant Parton

from one John Doe # 1 (believed to be Theodore Frattini) who was parked in front of the Diner [where the sale took place] in a 1968 yellow Chrysler bearing N.Y. registration XT 1417.

On appeal, Frattini contends that this statement was inadmissible hearsay,[2] the introduction of which was error; we agree, and accordingly reverse his conviction.

1. On February 21, 1974, Parton was sentenced to two years probation.

2. In his brief on appeal, Frattini alternatively argued that the report had never been re-

ceived in evidence at all, yet was nonetheless improperly allowed to be brought into the jury room. At oral argument, appellate counsel conceded that this position was incorrect.

This case is governed by United States v. Ware, 247 F.2d 698 (7th Cir. 1957), which overturned a narcotics conviction because of the improper admission into evidence of envelopes bearing notes by government agents on the circumstances of the drug purchases. Accord, United States v. Brown, 451 F.2d 1231 (5th Cir. 1971); Sanchez v. United States, 293 F.2d 260 (8th Cir. 1961). Cf. United States v. Adams, 385 F.2d 548, (2d Cir. 1967) (harmful comments never received in evidence). Although the bare chemist's report was admissible under the business records exception to the hearsay prohibition, Ware, supra, 247 F.2d at 699–700, the incriminating remarks of Agent Driver were not. Moreover, the erroneous receipt of these comments in evidence cannot be viewed as harmless since the prosecutor stressed them in summation, and the jurors were allowed to examine the exhibit during their deliberations. Ware, supra, 247 F.2d at 700–701; Brown, supra, 451 F.2d at 1234; Sanchez, supra, 293 F.2d at 267, 269. See note 2 supra.

The Government, however, seeks to distinguish Ware in that there the hearsay declarations neatly condensed the whole case against the defendant, 247 F.2d at 700, while here the objectionable statement actually "muddie[d]" the prosecution's proof, given by Parton, that Cardile and not Frattini transmitted the drugs.[3] But appellee misconceives the essential thrust of this argument. In Ware, the fact that the challenged "memoranda were merely cumulative of other evidence properly in the record" was regarded as a mitigating factor. 247 F.2d at 700. In this case, however, the exhibit at issue contained evidence not theretofore admitted and not admissible at all because it was speculation by Agent Driver based upon what he had learned from some other source. In addition, the exhibit "switched theories" on Frattini in devastatingly harmful fashion. Until admission of the report, the jurors heard no testimony placing the cocaine in Frattini's possession. But after its receipt, they could have concluded that Frattini was directly linked to the sale. We cannot therefore say that this highly significant piece of evidence, specifically requested by the jurors for scrutiny in the jury room, did not affect their view of the case or influence them to defendant's detriment.

The Government also contends that the part of the report relating to the yellow Chrysler was "in fact admissible as an implied prior consistent statement of Parton after his testimony had been attacked as a recent fabrication . . . ."[4] According to appellee, the challenged statement tends to show that Parton had told the agent

long before he had been arrested and had a motive to fabricate, that the occupant of the Chrysler was one of the people who supplied him with cocaine. Otherwise, the agent would not have recorded and checked out the ownership of the vehicle and come to the erroneous conclusion that Frattini had handed the drugs to Parton.[5]

Even ignoring the strained nature of the argument (which relies on supposed statements by Parton to Agent Driver to rehabilitate the former's testimony, attacked as the product of his post-arrest lies), we would in any event reject the claim because it does not go far enough. Whatever its merits with respect to the remarks about the Chrysler, the prior consistent statement rubric clearly fails to cover the vital preceding phrase identifying Parton's supplier as "one John Doe # 1 (believed to be Theodore Frattini)" since, as we have already remarked, this comment was not consistent —but, on the contrary, was wholly at odds—with the Government's earlier

---

3. Supplementary Brief for Appellee at 2 (submitted in letter form, in response to the panel's request at oral argument).

4. Supplementary Brief for Appellee at 2, supra note 3.

5. Id. at 3.

proof via Parton as to the source of the drugs.

In the absence of any justification for admitting the challenged hearsay evidence, we reverse appellant Frattini's conviction and remand for further proceedings consistent with this opinion.[6]

## II

We turn now to appellant Cardile. Although he does not urge this point, we have nonetheless considered whether our holding in co-defendant Frattini's case dictates a similar outcome here. Upon reflection, however, we do not believe that the hearsay error as to Frattini could have had any significant prejudicial "spillover" onto Cardile, which would call for reversal of the latter's conviction for the same evidentiary reason. We note that Cardile never objected below to the admission of Government Exhibit Nine. (Nor does he now in his brief on appeal except by a blanket adoption clause, incorporating "all of the points of argument . . . in the brief of the other appellant herein insofar as applicable to his case.")[7] This failure to raise a claim is hardly surprising in view of the fact that the agent's hearsay comments, if anything, actually helped Cardile. Certainly, trial counsel thought so since, in his summation, in an effort to impeach the credibility of Parton, he dwelt on the discrepancy between the prosecution's theory of the case (that Cardile supplied the contraband) and the statement inculpating Frattini.

Cardile's principal claim on appeal is that the court improperly refused to grant a short continuance pending the arrival of a witness from Atlanta. Appellant requested an overnight adjournment for this purpose after the final defense witness had been heard. Trial counsel informed the court that the case was ending earlier than he had anticipated—hence the Atlanta witness's absence—but that the projected testimony would consume no more than 20 minutes on the next day. The judge denied the continuance, however, on the ground that the intended evidence would be merely cumulative.

The court was told that the Atlanta witness would "testify about some conversations that he had with Floyd Parton . . . September 18th, the time of his arrest . . . ." After a brief exchange between the judge and the Assistant United States Attorney, the former responded:

> If that's what he is going to testify to, you have had testimony from you [trial counsel], . . . from Mr. Mancuso, . . . from Mr. Cardile. I don't see where that is going to be anything more than cumulative.

Cardile argues on appeal that the proposed evidence was not, as the court thought, cumulative since it dealt with an earlier talk with Parton than the one already related by others.[8] We agree with this contention and—had we been in the trial judge's place—might well have decided to grant the adjournment, brief as it was. But "[t]he matter of continuance is traditionally within the discretion of the trial judge . . . ." Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L. Ed.2d 921 (1964). On this record, we cannot say that the failure to grant a continuance constituted an abuse of dis-

---

6. In light of our disposition of this matter, we do not reach Frattini's second claim on appeal: that the court erred by failing to hold a hearing to determine whether one of the jurors was able to understand English. Cardile wisely does not make this argument since his counsel objected in the trial court to excusing the juror, on the grounds that

"[h]e understood the questions that were put to him by [the court] and he gave answers to those questions . . . ."

7. Brief for Cardile at 11.

8. Mancuso, Cardile, and trial counsel Christiansen testified to a conversation that occurred on December 3, 1972.

cretion. Trial counsel for Cardile never made an offer of proof, as to the contents of the alleged "conversations." Nor did he—after the return of the verdict and the witness's presumed arrival from Atlanta—make a motion for a new trial, with an affidavit setting forth the testimony in detail. (At that point, having had the chance to interview the witness in person, he should have known the exact nature of the proffered evidence.) Given the vagueness of counsel's allusion to the witness's story, the judge acted within bounds in refusing appellant an adjournment. Cf. United States v. Wyler, 487 F.2d 170, 173–174 (2d Cir. 1973).

We have considered Cardile's other points on appeal[9] and find them to be without merit.

We therefore affirm the conviction of appellant Cardile.

FRIENDLY, Circuit Judge (concurring and dissenting):

While I join in the reversal of Frattini's conviction, I would also reverse Cardile's.

I am unable to share my brothers' belief that it is feasible to disentangle the two defendants. The Government's testimony linked them inextricably; there was no evidence on which the jury could rationally find Frattini innocent and Cardile guilty. Even though Exhibit 9 cast Frattini rather than Cardile in the role of the person making the actual delivery, it bolstered the Government's case that a narcotics transaction had taken place and weakened the testimony of both defendants that nothing of the sort had occurred. Beyond this, reversal

of Cardile's conviction is necessary in justice not only to him but to Frattini. The Government's evidence at the new trial inevitably will include reference to Cardile, the jury will wonder why he is not a defendant, and if it speculates that he has been convicted, this will work against Frattini. Furthermore, Cardile's testimony was helpful to Frattini; it will be the opposite if he now takes the stand and the Government shows he has been convicted. These considerations are of special weight because the Government's case rested almost entirely on the testimony of Parton and both defendants offered plausible and partially corroborated explanations that their presence on the scene was innocent.

My belief that Cardile also should have a new trial is reinforced by what I consider an arbitrary denial of his counsel's request for a continuance from 3:30 P.M. until the following morning for the presentation of a witness from Atlanta and an erroneous refusal to permit Cardile to explain that his apparently easy life style was due to hard work by himself and his wife rather than to narcotics profits.

This is the rare narcotics case where the defendants may be innocent. There must be a new trial in any event, and it will take only a few hours longer if both defendants are included. Our duty is to "require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106. I do not think it just to either Cardile or Frattini that the new trial should be truncated by our attempting to put asunder two defendants whom the Government's chief witness so tightly joined.

9. Cardile additionally complains of the court's alleged refusal to allow testimony as to his and his wife's life style and working habits (to rebut the inference that they lived on illicit profits from drugs) and of supposed violations of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), in the admission of incriminating statements.