John C. RAINEY, Individually and as Personal Representative of the Estate of Barbara A. Rainey, Plaintiff-Appellant,

v.

BEECH AIRCRAFT CORPORATION, Beech Aerospace Services, Inc., and Pratt & Whitney Canada, Ltd., Defendants-Appellees.

Rondi M. KNOWLTON, Individually and as Personal Representative of the Estate of Donald Bruce Knowlton, Plaintiff-Appellant,

v.

BEECH AIRCRAFT CORPORATION, Beech Aerospace Services, Inc., and Pratt & Whitney Canada, Ltd., Defendants-Appellees.

Nos. 84–3625, 84–3626.

United States Court of Appeals, Eleventh Circuit.

March 25, 1986.

Rehearing En Banc Granted and Opinion Vacated May 27, 1986.

Dennis K. Larry, Donald H. Partington, Pensacola, Fla., for plaintiffs-appellants.

Thomas E. Scott, Joseph W. Womack, R. Benjamin Reid, Miami, Fla., Robert P. Gaines, Joe J. Harrell, Pensacola, Fla., for defendants-appellees.

Before FAY and JOHNSON, Circuit Judges, and HOFFMAN *, Senior District Judge.

PER CURIAM:

Barbara Ann Rainey and Donald Bruce Knowlton died on July 13, 1982 in a fiery plane crash at Middleton Field, Alabama. Their spouses, John Charles Rainey ("Rainey") and Rondi M. Knowlton ("Knowlton") sought money damages under the Florida Wrongful Death Act, Fla.Stat. §§ 768.16–.27 (1985), in district court.[1] The jury returned a verdict against Rainey and Knowlton. We hold that the trial judge committed reversible error in two evidentiary rulings and remand for a new trial.

## I.

On July 13, 1982 Lieutenant Commander Barbara Ann Rainey, a flight instructor with the United States Navy, was issued a T–34C Turbo-Mentor aircraft, number 3E955, for a training exercise at Middleton Field, Alabama. Her student was Ensign Donald Bruce Knowlton. Ensign Knowlton was to practice "touch and go" landings and takeoffs.[2] There were five aircraft in the "touch and go" pattern.

Witnesses testified that Ensign Knowlton, after successfully completing four "touch and go" patterns, began "climbing out low; that is, below the standard altitude, and slow, slower than the 100 knots or 90 knots that the aircraft should have been at." Witnesses also testified that Ensign Knowlton made an early crosswind turn; this early turn prompted two radio transmissions. Captain Charles E. Guthrie, a flight instructor riding in another aircraft in the pattern, cautioned Lieutenant Commander Rainey:[3] "Aircraft turning crosswind, you're cutting somebody out." Similarly, Lieutenant Colonel David I. Habermacher, Jr., a flight instructor in the aircraft forced out of the pattern, transmitted the warning: "Aircraft turning crosswind, you're cutting us out. Heads up."

Lieutenant Commander Rainey did not verbally respond to these radio transmissions. Witnesses testified, however, that following these transmissions Lieutenant Commander Rainey's aircraft banked sharply to the right. While the threatened midair collision with Lieutenant Colonel Habermacher's aircraft was thus avoided, the aircraft piloted by Lieutenant Commander Rainey rapidly lost altitude, crashed in a wooded area two miles southeast of Middleton Field, and burned. Neither Lieutenant Commander Rainey nor Ensign Knowlton survived the crash.

On July 14, 1982 Lieutenant Colonel Habermacher directed Lieutenant Commander William C. Morgan, Jr. to conduct an informal investigation into the circumstances surrounding the crash. On September 1, 1982 Lieutenant Commander Morgan reported, in writing, his findings of fact, opinions and recommendations pursuant to the requirements established by the Judge Advocate General. Lieutenant Commander

---

* Honorable Walter E. Hoffman, Senior U.S. District Judge for the Eastern District of Virginia, sitting by designation.

1. Rainey brought suit individually, as the personal representative of his wife's estate, and on behalf of his minor children, Cynthia Ann Rainey and Katharine Marie Rainey. Knowlton sued individually, as the personal representative of her husband's estate, and on behalf of her minor children, Ramsey Nia Knowlton and Branigan McDermott Knowlton. By order dated March 20, 1984 the two cases were consolidated "for all purposes including consolidation for trial."

2. A "touch and go" is a training exercise employed to familiarize students with takeoffs and landings. After takeoff, the student circles the airfield in an oval or racetrack pattern and then lands the aircraft. Upon landing, the student does not stop the craft, but accelerates to take off again.

3. It is, of course, impossible to determine whether Lieutenant Commander Rainey or Ensign Knowlton was in control of the aircraft at this time. Witnesses knowledgeable in flight instruction, however, testified that Lieutenant Commander Rainey, a trained pilot and flight instructor, would, under these circumstances, assume control over the aircraft.

Morgan's report lists as an opinion that pilot error was "[t]he most probable cause of the accident."

Rainey and Knowlton disagree with Lieutenant Commander Morgan's opinion. In a letter written to Lieutenant Commander Morgan about the "aircraft mishap," Rainey, also a flight instructor with the United States Navy, concluded that the mishap was not the result of pilot error but more probably "caused by some form of pneumatic sensing/fuel flow malfunction, probably in the fuel control unit." According to Rainey, this malfunction prompted an in-flight "power interruption" or "rollback" making it impossible for Lieutenant Commander Rainey to sustain sufficient power to maintain flight. Knowlton agreed with Rainey's conclusion and on April 15, 1983 Rainey and Knowlton filed separate suits in the United States District Court for the Northern District of Florida, alleging negligence and strict product liability causes of action. Beech Aircraft Corporation, the manufacturer of the T–34C Turbo-Mentor aircraft, Pratt and Whitney Canada, Inc., the manufacturer of the engine incorporated into the T–34C aircraft, and Beech Aerospace Services, Inc., the United States Navy's contract maintenance service for the T–34C aircraft, were named as defendants.

At trial, the only disputed issue was the cause of the fatal crash. Because both Lieutenant Commander Rainey and Ensign Knowlton were not available to testify and because the aircraft was almost totally destroyed by fire, the parties relied heavily on opinions developed by expert witnesses. The defendants also relied on the opinions contained in the investigative report prepared by Lieutenant Commander Morgan. Pointing to Lieutenant Commander Morgan's opinion that pilot error was the most probable cause of the crash, the defendants argued that they should not be held responsible. The jury agreed.

On August 1, 1984 Rainey and Knowlton, complaining about two of the trial judge's evidentiary rulings, filed a motion for a new trial.[4] The judge denied the motion. This appeal promptly followed.

## II.

The district court admitted into evidence, over Rainey and Knowlton's objection, excerpts from the investigative report prepared by Lieutenant Commander Morgan.[5] On appeal, Rainey and Knowlton argue that many of the excerpts from the investigative report, specifically Lieutenant Commander Morgan's opinions, should not have been admitted into evidence because these opinions did not fall within the public records exception to the general hearsay rule.[6]

To be admissible, the excerpts from Lieutenant Commander Morgan's re-

---

4. Rainey and Knowlton objected to the admissibility of several opinions contained in Lieutenant Commander Morgan's investigative report. Rainey and Knowlton also objected to the restriction of Rainey's trial testimony. These objections are now raised on appeal.

5. On March 20, 1984, at the pretrial conference, the district court ruled that Lieutenant Commander Morgan's report was trustworthy and admissible but "only on its factual findings and would not be admissible insofar as any opinions or conclusions are concerned." On July 10, 1984, the day before trial, the district court reversed in part its prior ruling. At that time, the judge decided to admit into evidence the opinions and conclusions contained in the investigative report.

In light of the court's ruling, Rainey and Knowlton requested an opportunity to review Lieutenant Commander Morgan's report and "leave, in the event we so decide, to call as a witness such person or persons who might not have been called at this trial, but who could present evidence concerning that conclusion [that pilot error was the "most probable cause" of the crash] and the trustworthiness of it." The district court granted the request.

6. The following opinions were admitted into evidence:
   1. Examination of the findings of fact, aircraft history, and inspection records indicate no irregularities which can be specified as a cause of the crash of 3E955.
   2. There is no factual evidence of command or supervisory error.
   3. There is no factual evidence to indicate that LCDR Rainey or ENS Knowlton were not physically, sociologically [sic], or mentally prepared to complete their flight.

port must satisfy the hearsay exception for public records and reports. *See* Fed.R. Evid. 803(8). Rule 803(8) provides a hearsay exception in civil actions for "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness." Lieutenant Colonel Habermacher, with authorization from the Manual of the Judge Advocate General § 0902, at 9–3 to –5, appointed Lieutenant Commander Morgan to conduct an investigation into the circumstances surrounding the aircraft accident. Lieutenant Commander Morgan's report, since it was prepared in conjunction with an authorized Judge Advocate General investigation, is a public record. Moreover, because no evidence was introduced to show that the report lacked trustworthiness, we find that the report was indeed trustworthy.[7] Thus, the factual findings contained in the report are admissible under Rule 803(8).

■ Cases interpreting Rule 803(8), however, disclose a difference of opinion as to the meaning of "factual findings." *Compare Complaint of American Export Lines, Inc.*, 73 F.R.D. 454, 458 (S.D.N.Y. 1977) (evaluative conclusions or opinions are not "factual findings"); *with Complaint of Paducah Towing Co.*, 692 F.2d 412, 420 (6th Cir.1982) (evaluative reports are admissible as "factual findings" if based upon circumstantial evidence) (citation omitted).[8] In deciding how to interpret "factual findings" in the context of this case, we are bound by the Fifth Circuit's interpretation in *Smith v. Ithaca Corp.*,

---

4. There is evidence to indicate that the failure of ENS Knowlton's rotary buckle may have contributed to the severity of his head injury.

\* \* \* \* \* \*

7. The most probable cause of the accident was the pilots failure to maintain proper interval.

7. The Advisory Committee on the Proposed Rules notes that Fed.R.Evid. 803(8) "assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present." Fed.R.Evid. 803(8) advisory committee note. Thus, the burden was upon Rainey and Knowlton to show that the report was inadmissible because its sources of information or other relevant circumstances indicated a lack of trustworthiness. *Melville v. American Home Assurance Co.*, 584 F.2d 1306, 1316 (3d Cir.1978) (citing *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178 (5th Cir.1975)). That burden was not met here.

Rainey and Knowlton argue that they were unable to meet their burden because they were surprised by the district court's ruling the day before trial admitting into evidence Lieutenant Commander Morgan's opinions. But Rainey and Knowlton knew months before trial that the defendants would seek to admit Lieutenant Commander Morgan's report into evidence. Still, Rainey and Knowlton made no effort to attack the qualifications of Lieutenant Commander Morgan or the methodology he employed in conducting the investigation. In fact, when the trustworthiness of the report was discussed during the pretrial conference, Rainey and Knowlton admitted that there was no evidence to indicate that the report was untrustworthy.

On July 10, 1984 when the judge decided to admit the opinions into evidence, he granted Rainey and Knowlton leave to review the report and, if they so chose, to present evidence concerning the trustworthiness of the opinions. Rainey and Knowlton presented no such evidence, and did not seek a continuance.

Thus, in light of the fact that there was no evidence presented to show that the report lacked trustworthiness we agree with the district court in finding that the report was trustworthy.

8. The legislative history of the Rule reveals the origins of the conflict. The House Committee on the Judiciary intended that "'factual findings' be strictly construed and that evaluations or conclusions contained in public reports shall not be admissible under this Rule." H.R.Rep. No. 93–650, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7075, 7088. On the other hand, the Senate Committee on the Judiciary took "strong exception to this limiting understanding of the application of the rule." S.Rep. No. 93–1277, 93d Cong., 2d Sess. 4, *reprinted in* 1974 U.S.Code Cong. & Ad.News 7051, 7064. The Senate Judiciary Committee recommended a liberal interpretation of "factual findings" so as to include "evaluative reports." *Id.* The Advisory Committee on the Proposed Rules also suggested that "factual findings" might encompass evaluative reports. *See* Fed.R.Evid. 803(8) advisory committee note.

612 F.2d 215 (5th Cir.1980).[9] In *Smith*, the Fifth Circuit considered the admissibility of a Coast Guard Marine Board of Investigation Report and found that the "evaluative conclusions and opinions of the Coast Guard Marine Board of Investigation contained in the report should not have been admitted into evidence." *Id.* at 222. The Fifth Circuit noted that:

the language of Rule 803 suggests that "factual findings" defines something other than "opinions" and "diagnoses" which are admissible under Rule 803(6) when contained in the record of "a regularly conducted business activity." Rule 803(8), although similar to Rule 803(6), substitutes the term "factual findings" for "opinions" and "diagnoses." Since these terms are used in similar context within the same Rule, it is logical to assume that Congress intended that the terms have different and distinct meanings.

612 F.2d at 221–22 (citations omitted). Thus, while the defendants urge us to follow "[t]he prevailing view ... that all evaluative conclusions are within the scope of Rule 803(8)(C)," *Walker v. Fairchild Industries*, 554 F.Supp. 650, 653 (D.Nev.1982) (citations omitted); *see also Cohen v. General Motors Corp.*, 534 F.Supp. 509, 512 (W.D.Mo.1982) ("it appears that the more expansive reading [of Rule 803(8) ] is gaining favor") (citations omitted), we are not free to do so. The Fifth Circuit in *Smith* clearly launched this court's precedent in a different direction, a direction we must follow. We therefore hold that the district court erred in admitting into evidence the evaluative conclusions and opinions contained in Lieutenant Commander Morgan's report.

Having concluded that the district court erred in admitting into evidence these evaluative conclusions and opinions, we must now determine whether this error was harmless. *See Collins v. Wayne Corp.*, 621 F.2d 777, 782 (5th Cir.1980). We hold that it was not.

■ Several of Lieutenant Commander Morgan's opinions touched on the cause of the aircraft crash—the ultimate issue the jury was to decide. These opinions were submitted to the jury without ever having been tested by cross-examination. Moreover, the defendants were able to capitalize on the improper admission of these opinions by highlighting the opinions to the jury during closing argument. The jury returned a verdict for the defendants but the improper admission of Lieutenant Commander Morgan's opinions may have influenced this verdict. The admission of these opinions, therefore, cannot be considered harmless. The district court committed reversible error; Rainey and Knowlton must be afforded a new trial.

### III.

Another issue raised by this appeal is whether the district court improperly restricted Rainey's trial testimony. A.H. Toothman, counsel for Beech Aircraft Corporation, called Rainey as an adverse witness. Rainey was questioned about the letter he had written to Lieutenant Commander Morgan about the "aircraft mishap." The questions concerned paragraphs two and four of the letter. In paragraph two, Rainey had written that before the training exercise, his wife, Lieutenant Commander Rainey, was under "unnecessary" pressure. According to Rainey, his wife had attempted to cancel the exercise "[o]n three separate occasions," and "was observed to terminate [one] conversation in an uncharacteristically heated and disgusted manner." In paragraph four, Rainey had written that the aircraft piloted by his wife violated "pattern integrity ... as it turned crosswind without proper interval."

---

9. The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**1529**

Rainey had also admitted that either his wife or Ensign Knowlton "react[ed] instinctively and abruptly by initiating a hard right turn, away from [the aircraft piloted by Lieutenant Colonel Habermacher]." Because these statements tended to support the defendants' theory that pilot error led to the crash, the district court, over Rainey and Knowlton's objection, permitted Mr. Toothman's inquiry.

During Rainey's cross-examination, however, the district court sustained the defendants' objection to the following question propounded by Dennis K. Larry, counsel for Rainey and Knowlton: "In the same letter to which Mr. Toothman made reference to in his questions, sir, did you also say that the most probably [sic] primary cause of this mishap was rollback?" The district court did not allow the question, holding that the question improperly sought to elicit an opinion from a non-expert witness. On appeal, Rainey and Knowlton argue that the district court improperly excluded Rainey's testimony.[10] We agree.

A district court's evidentiary rulings are discretionary and "will not be disturbed on appeal absent a clear showing of an abuse of discretion." *United States v. Russell,* 703 F.2d 1243, 1249 (11th Cir.1983) (citations omitted). Under this standard, we must conclude that the district court committed reversible error in limiting Rainey's testimony.

Federal Rule of Evidence 106 provides: "When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." Rule 106 is based on the "rule of completeness," and seeks to avoid the unfairness inherent in "the misleading impression created by taking matters out of context."[11] Fed.R.Evid. 106 advisory committee note.

Here, Rainey was questioned about a letter he had written to Lieutenant Commander Morgan. The defendants questioned Rainey about several statements in this letter that, in isolation, seemed to support the defendants' position that pilot error caused the crash. Mr. Larry, counsel for Rainey and Knowlton, sought to place these statements in perspective by questioning Rainey about paragraph five of the letter. In paragraph five, Rainey had concluded that "[t]he most probale [sic] primary cause factor of this aircraft mishap is a loss of useful power (or rollback) caused by some form of pneumatic sensing/fuel flow malfunction." This statement would have placed the prior statements in context and clearly rebutted the misleading impression created by the prior statements alone.

The court, therefore, erred in permitting the defendants to examine Rainey about portions of his letter while prohibiting cross-examination about other relevant portions.[12] Because paragraph five of the letter would have harmonized the prior

---

**10.** Federal Rule of Evidence 103(a)(2) cautions that error may not be predicated upon a ruling excluding evidence unless "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." *United States v. Winkle,* 587 F.2d 705, 710 (5th Cir.) (quoting Fed.R.Evid. 103(a)(2)), *cert. denied,* 444 U.S. 827, 100 S.Ct. 51, 62 L.Ed.2d 34 (1979); *see also* 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 103[03] (1985). While Rainey and Knowlton failed to make an offer of proof indicating the substance of Rainey's excluded testimony, the substance of the testimony was readily apparent from the language of the question the defendants objected to.

**11.** Technically, Rule 106 is limited in its application to instances when a party introduces a writing or recorded statement into evidence. Here, we find the defendants' questions concerning Rainey's letter tantamount to the introduction of the letter into evidence. We therefore apply the concerns of the Rule—fairness and completeness—to this case.

**12.** The district court's limitation of Rainey's testimony was erroneous for another reason as well. As Rainey and Knowlton noted, the district court permitted the defendants' inquiry into Rainey's letter, finding the statements in the letter admissible against Rainey as a prior inconsistent statement under Fed.R.Evid.

statements with Rainey's stance at trial, the jury was given an incomplete and misleading impression of Rainey's position. Under the "rule of completeness" embodied in Rule 106, the limitation of Rainey's testimony was thus inherently unfair and an abuse of discretion. Rainey and Knowlton are entitled to a new trial.

## IV.

We hold that the trial judge committed reversible error in 1) admitting into evidence the evaluative conclusions and opinions contained in Lieutenant Commander Morgan's investigative report and 2) limiting Rainey's trial testimony. We therefore reverse the judgment entered against Rainey and Knowlton and remand for a new trial.

REVERSED AND REMANDED.

JOHNSON, Circuit Judge, concurring specially:

I concur with the panel's opinion in this case. I write separately to urge that, while we are clearly bound by *Smith v. Ithaca Corp.*, 612 F.2d 215 (5th Cir.1980), to hold that the evaluative conclusions contained in Lieutenant Commander Morgan's report are not admissible under Fed.R.Evid. 803(8)(c), our interpretation of this rule is ripe for reconsideration.

*Smith* is an anomaly among the circuits. The majority view favors broad admissibility under Rule 803(8)(c)'s "factual findings" standard. *See, e.g., Ellis v. International Playtex, Inc.*, 745 F.2d 292, 300–301 (4th Cir.1984) ("[I]t is well established that the phrase should be interpreted broadly"). Weinstein's evidence treatise advocates such a reading, *Weinstein on Evidence* § 803(8)[03] (1985) ("[i]f the report states a conclusion that would be helpful—and is

reliable—it should be admitted"), and the Advisory Committee's Note may be read as consonant with this interpretation, *id.*

Broad admissibility releases trial judges from the duty to draw sometimes arbitrary lines between fact and opinion, and focuses the court's inquiry instead on the trustworthiness and relevance of the reports in question. This case presents an appropriate opportunity for reconsideration of this critical evidentiary issue by the full Court.

---

801(d)(1)(A) and admissible against Knowlton as an adoptive admission under Fed.R.Evid. 801(d)(2)(B). Mr. Larry sought to question Rainey about paragraph five of the letter. Rainey and Knowlton contend that Rainey's statement in paragraph five should have been ruled admis-

sible under Fed.R.Evid. 801(d)(1)(B) as "a prior consistent statement made by him offered to rebut an implied or express charge that in other parts of his letter he had made statements inconsistent with his trial theory." Brief for Appellants at 28–29. We agree.