**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Angel PENDAS–MARTINEZ and Andres Morrero–Laso, Defendants–Appellants.**

**No. 87–5264.**

United States Court of Appeals, Eleventh Circuit.

May 23, 1988.

Theodore J. Sakowitz, Federal Public Defender, Richard C. Klugh, Jr., Asst. Federal Public Defender, Miami, Fla., for Pendas–Martinez and Morrero–Laso.

Leon B. Kellner, U.S. Atty., Linda Collins Hertz, Judith F. Kozlowski, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HILL, Circuit Judge, HENDERSON *, Senior Circuit Judge, and MURPHY **, District Judge.

HAROLD L. MURPHY, District Judge.

Appellants Angel Pendas–Martinez (Pendas) and Andres Morrero–Laso (Morrero) were convicted by a jury for conspiracy to possess with intent to distribute and possession with intent to distribute fifty kilograms of marijuana on board a vessel of the United States, in violation of 21 U.S.C. §§ 955a(a), 955c, and 18 U.S.C. § 2. Appellants raise four issues for reversal of their convictions: the sufficiency of the evidence, the government's failure to disclose and destruction of evidence, improper witness comment by the government's case-agent on defendant Morrero's invocation of his right to silence and to counsel, and improper introduction into evidence and submission to the jury of Coast Guard reports that represented written summaries of the government's case. We agree that the improper admission and submission to the jury of one of the Coast Guard reports constituted an abuse of discretion that compels reversal of appellants' convictions and a remand for a new trial.[1]

---

* See Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Harold L. Murphy, U.S. Judge for the Northern District of Georgia, sitting by designation.

1. While we find it unnecessary to address the remaining issues, *but see infra* note 2, we note the district court's comment on the government's handling of this case: "I am not ... happy with the Government.... Destruction of evidence, officers giving this kind of testimony,

### The Arrest of the Appellants

At trial, Coast Guard officers testified that on June 29, 1986, at about 3:20 a.m., the Coast Guard vessel *Cape Gull* was patrolling in international waters off Bimini's coast. The crew spotted on radar two small boats moving together. When the *Cape Gull* approached and shined its lights on the boats, the boats separated, and the *Cape Gull* chased the boat that headed North. The *Cape Gull* requested a faster Coast Guard vessel, the *Matagorda*, to join the chase. *Matagorda* crew members testified that they saw one of the men on the pursued boat toss three white packages off the boat. The packages hit the *Matagorda's* hull, and crew members tried but failed to pull them from the water. The small vessel was stopped finally at about 4:45 a.m., by a Coast Guard helicopter. *Matagorda* crew boarded the vessel and took the appellants into custody. Several seeds were found under a cushion in the forward cabin of the boat. Coast Guard officers testified that the seeds field-tested positive for marijuana. Other than the seeds, no marijuana was found on board.

Approximately two hours later, the Coast Guard located 15 bales of marijuana floating in the water a few miles from where the appellants' vessel was stopped in the approximate coordinates of where the *Matagorda* crew saw the three white packages being thrown overboard. Appellants were arrested on board the *Matagorda.* Eleven of the bales tested positive for marijuana. Coast Guard officers testified that the seeds found on the appellant's boat were intentionally discarded because they were considered unimportant.

Pendas's wife testified that Pendas had purchased the boat approximately one week before the arrest and that Pendas had left home on June 28 to test the boat. The defendants' theory of the case essentially was that the government failed to prove that the bales of marijuana found in the water had come from their boat. The seeds could have been on the boat when Pendas purchased it one week prior, and the government's subsequent destruction of the seeds precluded testing to determine whether they had any connection to the marijuana found in the water.[2]

### The Admission of Officer Chason's Report

Appellants contend that they were denied a fair trial when the district court admitted into evidence and submitted to the jury room two Coast Guard documents. The first was a handwritten report by Coast Guard Officer Chason of the events of the night of the chase and arrest of the appellants.[3] The second was the *Cape Gull's* ship log.[4] Appellants contend that both documents were inadmissible hearsay and were extremely prejudicial because they represented written summaries of the government's entire case against them.

The Government contends that the district court properly admitted Chason's report as a prior consistent statement used to rebut a charge of recent fabrication, *see* Fed.R.Evid. 801(d)(1)(B), and admitted the ship's log as a business record, *see* Fed.R.

---

it is really disgusting. This case was so poorly handled by the Government, it is unbelievable." 4 Record on Appeal at 39.

**2.** The issue of the government's destruction of evidence likely will arise again at the appellants' new trial. The question will be the admissibility of government testimony as to the nature of the seeds allegedly found on appellants' boat and intentionally destroyed by the government before trial. The test for this issue in this Circuit focusses on "'the materiality of the evidence, the likelihood of mistaken interpretation of it by the government witnesses or the jury, and the reasons for its nonavailability to the defense.'" *United States v. Nabors,* 707 F.2d 1294, 1296–97 (11th Cir.1983), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1271, 79 L.Ed.2d 677 (1984), *quoting United States v. Herndon,* 536 F.2d 1027,

1029 (5th Cir.1976). *See also California v. Trombetta,* 467 U.S. 479, 489, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422 (1984); *United States v. Henriquez,* 731 F.2d 131, 137 (2d Cir.1984); *United States v. Loud Hawk,* 628 F.2d 1139, 1151–52 (9th Cir.1979) (*en banc*) (Kennedy, J.), *cert. denied,* 445 U.S. 917, 100 S.Ct. 1279, 63 L.Ed.2d 602 (1980). The first two factors, the materiality and identification of the destroyed evidence, will depend upon the evidence presented at the appellants' new trial. The Court notes that the third factor, the reason for the nonavailability of the evidence, weighs heavily against the government in this case.

**3.** Government's Trial Exhibit 10.

**4.** Government's Trial Exhibit 12.

Evid. 803(8). It alternatively contends that Chason's report was admissible under the completeness doctrine which informs Rule 106 of the Federal Rules of Evidence.

■ A district court's evidentiary rulings are discretionary and "'will not be disturbed on appeal absent a clear showing of an abuse of discretion.'" *Rainey v. Beech Aircraft Corp.*, 784 F.2d 1523, 1529 (11th Cir.1986), *panel decision reinstated after reh'g. en banc*, 827 F.2d 1498, 1499 (1987), *cert. granted*, — U.S. —, 108 S.Ct. 1073, 99 L.Ed.2d 233 (1988), *quoting United States v. Russell* 703 F.2d 1243, 1249 (11th Cir.1983). It is an abuse of discretion, however, to admit into evidence and send to the jury room government agent case summaries which constitute a written summary of the government's theory of the case. *See United States v. Brown*, 451 F.2d 1231 (5th Cir.1971). In *Brown*, the trial court admitted into evidence and submitted to the jury manilla envelopes that contained narcotics. The envelopes had written on the outside a detailed statement of the essential facts of the government's case and a more detailed statement within. *Id.* at 1232–34. Following the Seventh Circuit's analysis in *United States v. Ware*, 247 F.2d 698, 700 (7th Cir.1957), the Court held that the

> the jury had before it, not only the recollection of the oral testimony given from the stand, but it also had what has been called by the [Seventh Circuit in *Ware*] "a neat condensation of the government's whole case against the defendant(s). The government's witnesses in effect accompanied the jury into the jury room."

*Brown*, 451 F.2d at 1234, *quoting Ware*, 247 F.2d at 700. The Court concluded that even though "the persons who made the memoranda were present at the trial and were tendered for cross-examination (and) that the memoranda were merely cumulative of other evidence properly in the record *and that there was overwhelming evidence properly received on the defendant's guilt*" we cannot say that the error did not influence the jury, to the defendant's detriment, or even that it had but very slight effect.

*Id.*, *quoting Ware*, 247 F.2d at 700–01 (emphasis added); *accord, United States v. Quinto*, 582 F.2d 224, 235–36 (2d Cir.1978); *Sanchez v. United States*, 293 F.2d 260, 267–70 (8th Cir.1961); *see United States v. Frattini*, 501 F.2d 1234, 1235–36 (2d Cir. 1974) (while most of chemist's report was admissible as a business record, notation in the report by government agent alleging that the cocaine was likely purchased by defendant rendered the document inadmissible and improperly submitted to the jury); *United States v. Adams*, 385 F.2d 548, 550–51 (2d Cir.1967) (Friendly, *J.*) (statements on envelopes never admitted into evidence were improperly submitted to the jury).

Several exceptions exist to the rule enunciated in *Brown*. We distinguished *Brown* in *United States v. Benson*, 495 F.2d 475, 478–79 (5th Cir.), *cert. denied*, 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974), where the trial court allowed an F.B.I. agent's written summary of the defendant's post-arrest statement to be sent to the jury room. We distinguished *Brown*, first, because *Brown* concerned a violation of the hearsay rule, whereas in *Benson* the written summary constituted the defendant's own statement. Second, in *Benson*, the document was received into evidence and delivered to the jury only because defense counsel used it extensively in his cross-examination of the F.B.I. agent. *See id.* at 478–79. *See also United States v. Brantley*, 733 F.2d 1429, 1438 (11th Cir. 1984), *cert. denied*, 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985) (rule of *Brown* inapplicable where statement was not hearsay).

The Eighth Circuit similarly distinguished *Brown* and *Ware* where the district court permitted the submission to the jury of an agent-written memorandum on an envelope containing heroin where the defendant had challenged vigorously the proper handling of the exhibit, the chain of custody, and the written entries thereon. *See United States v. Parker*, 491 F.2d 517, 522–23 (8th Cir.1973). The court held that the one hearsay statement in the memorandum was merely cumulative, *id.*, and noted

that where chain of custody is not an issue, "the sending of such exhibits to the jury may well be found to be error[,]" *id.* at n. 6. *See also United States v. Coleman,* 631 F.2d 908, (D.C.Cir.1980) (not improper to submit to the jury an agent's "skeletal" notes on envelope of drugs prepared not solely for litigation but also to preserve record of chain of custody).

The question then is whether the instant case falls under the rule of *Ware* and *Brown* or under one of the exceptions. Because, as is explained *infra,* Officer Chason's report was inadmissible hearsay, was not used extensively on cross-examination, and no challenge was made to the accuracy of the report or the chain of custody of any evidence, the rule of *Brown* controls this case.

### The Admissibility of the Report under Fed.R.Evid. 801(d)(1)(B)

■ It is undisputed that Chason's report constitutes inadmissible hearsay unless one of the exclusions or exceptions to the hearsay rule permitted its admission.[5] The government contends the exclusion of Fed.R.Evid. 801(d)(1)(B) made the report admissible because Pendas's counsel's cross-examination of Officer Chason included an implied charge that Chason fabricated the discovery of marijuana seeds on the appellants' boat to strengthen the government's case. A thorough review of the record, however, demonstrates that Pendas's counsel made no such charge, and that even if the record could be so construed, the report contained additional levels of hearsay which rendered it inadmissible. Rule 801(d)(1)(B) provides as follows:

(d) Statements which are not hearsay. A statement is not hearsay if—

(1) Prior statement by witness. The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive....

Fed.R.Evid. 801(d)(1)(B).

Pendas's counsel examined Chason about the discovery of the seeds, the alleged field-test of the seeds, and their subsequent, pre-trial destruction. The thrust of the examination focussed on the absence of any residue, dust, or other evidence on the boat that would have indicated the recent presence of 15 bales of marijuana. The examination with regard to the discovery of the seeds focussed on the possibility that the seeds, found under the ripped-out seat cushion of the forward cabin, could have been there when Pendas purchased the boat one week earlier. Counsel argued that those seeds may have had no connection to the bales of marijuana found in the ocean, but that the destruction of the seeds prevented proof of their relationship to the bales. This cross-examination did not include a charge of recent fabrication of the discovery of the seeds.[6]

Even if the cross-examination could be so construed, Rule 801(d)(1)(B) would not make the report admissible because of the presence of additional levels of hearsay. Rule 805 of the Federal Rules of Evidence provides that "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." *See Southern Stone Co. v. Singer,* 665 F.2d 698, 703 (5th Cir. Unit B Jan. 1982) (even if one level of

---

5. " 'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c).

6. Appellants contend that the charge of fabrication, even if made, was not of a *recent* fabrication, since the fabrication occurred at the time the report itself was made. Thus, they maintain, the report had no probative value to support the testimony since the report was not

made before the motive to fabricate arose. This is the rule in some Circuits. *See, e.g., United States v. Quinto,* 582 F.2d at 229–35. This Circuit, however, has held repeatedly that the consistent statement need not have been made prior to the time that the alleged motive to fabricate arose. *See, e.g., United States v. Anderson,* 782 F.2d 908, 915–16 (11th Cir.1986), *citing United States v. Parry,* 649 F.2d 292, 296 (5th Cir. Unit B June 1981).

double-hearsay statement was not hearsay under Rule 801(d)(1)(B), second level of hearsay was not excepted from hearsay rule and document was inadmissible); *accord, United States v. Dotson,* 821 F.2d 1034, 1035 (5th Cir.1987).

Here Chason's report contained numerous examples of hearsay within hearsay:

> I was informed that *Matagorda* was chasing a high speed unlighted radar contact ... GM3 Swikehardt observed the 2 persons on board one to two minutes after observing the POB, GM3 Swikehardt reported they were tossing objects overboard.... I was advised by C.G. *Matagorda* that the helicopter and CGC *Cape Gull* had located numerous bales in the approximate location the VSC was observed tossing packages overboard.... [7]

When the district court overruled defense counsel's objections to admission of the report, defense counsel requested that the additional levels of hearsay be redacted from the report. The district court, however, refused this request.

Because the hearsay statements within the report have not been shown to be admissible under any of the exceptions to the hearsay rule, the unredacted document was inadmissible. Rule 801(d)(1)(B) thus provides no exception to the principle enunciated in *Brown.*

### The Admissibility of the Report Under Rule 106

■ The government contends that if the report was improperly admitted under Rule 801, it was admissible under the completeness doctrine which informs Rule 106 of the Federal Rules of Evidence. The government asserts that defense counsel read from the report and used it extensively on cross-examination such that it was essentially introduced into evidence. Fairness thus required introduction of the entire document. This argument is without merit. Rule 106 provides as follows:

> When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

Fed.R.Evid. 106. The rule is an expression of the doctrine of completeness. *See* Advisory Committee note, following Rule 106, *citing* McCormick, *Handbook of the Law of Evidence,* § 56 (2d Ed.1972). The rule is based on two considerations: First is the misleading impression created by taking matters out of context; second, the inadequacy of repair work when delayed to a point later in the trial. *Id., citing* McCormick at § 56; *see also United States v. Soures,* 736 F.2d 87, 91 (3rd Cir.1984) *cert. denied,* 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985).

"Technically, Rule 106 is limited in its application to instances when a party introduces a writing or recorded statement into evidence." *Rainey v. Beech Aircraft Corp.* 784 F.2d at 1529 n. 11.[8] In *Rainey,* however, we held that the rule required that the plaintiff be permitted to introduce the remainder of a letter after defense counsel cross-examined the plaintiff about isolated statements in the letter that tended to support the defendant's theory of the case. The remainder of the letter would have explained the misleading impression created by the isolated statements taken out of context. We held that the defendant's cross-examination was "tantamount to the introduction of the letter into evidence," *id.* at 1529 n. 11, and that the concerns of Rule 106—fairness and completeness—required permitting the plaintiff to testify as to the remainder of the letter, *id.* at 1529–30. *See also United States v. Rubin,* 609 F.2d 51, 63 (2d Cir.1979), *aff'd,* 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633

---

7. Government's Trial Exhibit 10.

8. As noted *supra,* the panel decision in *Rainey* was reinstated after rehearing *en banc. See Rainey,* 827 F.2d at 1499. The *en banc* Court unanimously concurred in the decision of the panel on the issue relevant to the instant case. *See id.* at 1500. With regard to a second point raised to the *en banc* Court, the panel decision was reinstituted by an evenly-divided Court. *See id.* at 1501.

(1981) (no error to admit document which defense counsel used extensively and quoted from copiously on cross-examination and where defense counsel himself revealed the portion later claimed to be prejudicial).[9]

Once a part of a document can be said to have been introduced, Rule 106 does not automatically make the entire document admissible. While there are conflicting Circuit Court decisions on whether the rule makes admissible parts of a document that otherwise would be inadmissible under the Rules of Evidence,[10] it is consistently held that the rule permits introduction only of additional material that is relevant and is necessary to qualify, explain, or place into context the portion already introduced. *See United States v. Sweiss,* 814 F.2d 1208, 1211 (7th Cir.1987); *United States v. Sutton,* 801 F.2d 1346, 1369 (D.C.Cir.1986); *United States v. Smith,* 794 F.2d 1333, 1335 (8th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 419, 93 L.Ed.2d 370 (1986); *United States v. Dorrell,* 758 F.2d 427, 434–35 (9th Cir.1985); *United States v. Soures,* 736 F.2d 87, 91 (3d Cir.1984), *cert. denied,* 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985); *United States v. Crosby,* 713 F.2d 1066, 1074 (5th Cir.), *cert. denied,* 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983); *United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982); *United States v. Marin,* 669 F.2d 73, 82–83 (2d Cir.1982).

In the instant case, counsel for Pendas used the report in his cross-examination of Chason. He did not, however, read from the report to suggest that Chason's testimony was inconsistent with the report or otherwise attack Chason's credibility with the report. At one point counsel inadvertently began to read from the report when questioning Chason about the testing of the seeds:

Q. And there is no record of the test?

A. I believe there is a record of it in my statement, isn't there?

Q. You referred to several seeds in the vicinity of the starboard—strike that. What I am referring to is any record of what precise test was conducted.

A. Oh, no, sir. You mean the type of test?

Q. Right. In other words, somebody put in a report somewhere a field-test was conducted?

A. Yes.[11]

A thorough review of the cross-examination reveals that neither this reading nor the general use of the report was so extensive as to be tantamount to introduction of the report into evidence. In *Rainey,* isolated sentences were read out of context which tended to create a misleading impression of the whole. Here defense counsel made no such use of Chason's report such that fairness required admission of the entire document.

The government fails to point to any specific portion of the report introduced by

---

**9.** Similar is *United States v. Benson,* 495 F.2d 475 (5th Cir.), *cert. denied,* 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1974), where the Court held that submission to the jury of defendant's post-arrest statement was not error where it was not hearsay, and where defense counsel had used it extensively on cross-examination. *Id.* at 478–79. While not referring to Rule 106, the Court applied the same principles of fairness and completeness.

**10.** Following 21 C. Wright & K. Graham, *Federal Practice and Procedure,* §§ 5072, 5078 (1977 & Supp.1987), several courts have held that Rule 106 can fulfill its function adequately only if otherwise inadmissible evidence can be admitted under the rule. *See, e.g., United States v. Sutton,* 801 F.2d 1346, 1368–69 (D.C.Cir.1986); *see also United States v. LeFevour,* 798 F.2d 977, 981 (7th Cir.1986) (either otherwise inadmissible evidence becomes admissible or if inadmissible (perhaps because of privilege), then the misleading portion must be excluded as well)

(dictum). This analysis emphasizes the rule's provision that "any other portion" may be admitted, with the only stated limitation being that the other portion "in fairness ought to be admitted." Fed.R.Evid. 106.

Other Circuits have followed 1 J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 106[02] at p. 106–12 (1985), to hold that Rule 106 addresses only an order of proof problem and does not make admissible what is otherwise inadmissible. *See, e.g., United States v. Costner,* 684 F.2d 370, 373 (6th Cir.1982); *United States v. Burreson,* 643 F.2d 1344, 1349 (9th Cir.1981), *cert. denied,* 454 U.S. 830, 102 S.Ct. 125, 70 L.Ed.2d 106, 454 U.S. 847, 102 S.Ct. 165, 70 L.Ed.2d 135 (1981).

This Court has not addressed this issue, and we find it unnecessary to do so here because we find Chason's report inadmissible under Rule 106 for other reasons.

**11.** 2 Record on Appeal at 158.

defense counsel for which the remainder was relevant and necessary to harmonize the introduced portion. Defense counsel's inadvertent reading the portion about the testing of the seeds did not make the entire report admissible. The report itself makes brief mention of the testing of the seeds, and the great majority of it was irrelevant to the issue. Because the report contained extensive material that had no relevance to any parts purportedly admitted, it was error to admit the entire unredacted report. Rule 106 did not permit its introduction. Because neither Rule 801(d)(1)(B) nor Rule 106 made the report admissible, and the government has demonstrated no other basis for its admissibility, the rule of *Brown* controls the issue and mandates reversal.

■ The strength of the evidence against the appellants at their trial ordinarily would militate in favor of a conclusion that the improper admission was harmless. *Brown*, however, makes clear that where the jury is given such a "neat condensation of the government's whole case" against the defendants, such that "the government's witnesses in effect accompanied the jury to the jury room," the error is not harmless even though "there was overwhelming evidence properly received on the defendant's guilt." *Brown*, 451 F.2d at 1234.

Accordingly, we REVERSE the convictions of the appellants and REMAND for a new trial.